HARRY J. SAWYER & another *vs.* EDMUND G. SHADER, executor, & another.

Plymouth.    October 8, 1947. — November 4, 1947.

Present: QUA, C.J., LUMMUS, RONAN, SPALDING, & WILLIAMS, JJ.

*Water. Real Property,* Water.

In a suit in equity to enjoin the defendant from obstructing a natural watercourse flowing through adjoining lands of the parties, findings by a master showed that filling up and narrowing of the watercourse and flooding of the plaintiff's property were due to natural causes and not to any acts of the defendant, and required dismissal of the bill.

BILL IN EQUITY, filed in the Superior Court on May 23, 1945, originally against Evelyn B. Shader and Town of West Bridgewater.

The suit was heard by *O'Brien,* J., upon a master's report.

*C. G. Willard,* (*E. A. MacMaster* with him,) for the plaintiffs.

*H. F. Blunt,* for the defendants.

SPALDING, J.  By this bill in equity the plaintiffs seek to restrain the defendant[1] from obstructing a watercourse which drains their land, and to compel the removal of obstructions alleged to have been placed on it by the defendant.  The bill also contained a prayer for damages.  The case was referred, under the usual rule,[2] to a master who, after hearing the parties, filed a report.  After overruling the plaintiffs' exceptions to the report and denying their motion to recommit, the judge confirmed the report and entered a decree dismissing the bill.  The plaintiffs appealed.

Facts found by the master include the following:  The

[1] After the suit was commenced, the original defendant Shader died and her executor was substituted as a defendant.  The original defendant will be referred to as the defendant in this opinion.

[2] By the rule, the master was ordered "to hear the parties and their evidence and report his findings, together with such facts and questions of law as either party may request." — REPORTER.

plaintiffs and the defendant are the owners of adjoining lots, on each of which is a dwelling. The plaintiffs acquired their lot from the defendant by a deed dated August 28, 1942. The defendant's lot is to the south of the plaintiffs' and the defendant lived on it from 1931 until her death on July 19, 1945. The contour of the land back of the dwellings on each lot "afford[s] a natural slope or valley whereby surface water from lands to the north, east and west would flow" through the land of the plaintiffs and the defendant. The water coming into the plaintiffs' land forms a pool and then flows in a well defined channel to a depression in the defendant's land where it forms a pool. The "water flowing through the lands of . . . [the plaintiffs and the defendant] is a natural watercourse based on its well defined course with channel and banks, and its years of continuous flow during portions of the year." Shortly after the hurricane of 1938 the defendant "caused about three hundred cubic feet of loose twigs and small branches of a tree blown down during said hurricane to be thrown over the channel and flood plain of the watercourse some thirty feet north of the . . . [defendant's] pool," and "prior thereto she had caused lawn clippings to be deposited thereon."

In 1928 the watercourse between the pools was from three to five feet wide and about two feet deep. At the time of the hearing before the master it was about a foot in width and two feet in depth, and the banks were heavily overgrown with vegetation and bushes. Since 1926, during the winter and spring seasons and at times of heavy rainfall, the cellar of the dwelling on the plaintiffs' land has been flooded to a depth of one and one half to two feet. After the plaintiffs acquired the property the cellar floor of the dwelling has been wholly or partially covered with water from March to May of each year. If the watercourse were excavated to a depth of two feet below its present level it "would alleviate conditions now existing during the winter and early spring seasons," but the channel so excavated, unless cared for constantly, would fill up from natural causes within three or four years.

The ultimate findings of the master were that the filling

up of the watercourse has been due to natural causes and not to any acts of the defendant, and that no acts of the defendant have caused the flooding of the plaintiffs' cellar or land as alleged in their bill.

The decree dismissing the bill was right.

The denial of the plaintiffs' motion to recommit the master's report requires no discussion. The granting of this motion, which sought a recommittal of the report in order that additional facts be found and that certain evidence be reported, rested in the sound discretion of the trial judge. *Pearson* v. *Mulloney*, 289 Mass. 508, 513. *Buckley* v. *John*, 314 Mass. 719, 725. Its denial discloses no abuse of discretion.

The overruling of the exceptions to the master's report reveals no error. Exceptions to a master's report cannot be sustained unless error appears on the face of the report. *Minot* v. *Minot*, 319 Mass. 253, 258–259, and cases cited. The only exceptions that need be discussed are those alleging that the ultimate findings of the master were inconsistent with his subsidiary findings. We assume that the findings of the master establish that there was a natural watercourse running through the lands of the plaintiffs and the defendant, and that both parties have the rights and obligations incident thereto, even though no mention of it was made in the plaintiffs' deed. See *Johnson* v. *Jordan*, 2 Met. 234, 239; *Luther* v. *Winnisimmet Co.* 9 Cush. 171, 174; *McGowen* v. *Carr*, 272 Mass. 573, 576; *DiNardo* v. *Dovidio*, 312 Mass. 398, 402. Reading the report as a whole, we think that the findings must be interpreted to mean that what the defendant did in 1938 and prior thereto had no appreciable effect on the watercourse and that its obstruction and the flooding of which the plaintiffs complain were due to natural causes. The ultimate findings of the master, therefore, were not inconsistent with his subsidiary findings and they were binding on the trial judge, and are binding on us. *Kasper* v. *H. P. Hood & Sons, Inc.* 291 Mass. 24, 25. *Dodge* v. *Anna Jaques Hospital*, 301 Mass. 431, 435. They afford no basis for injunctive relief or damages.

*Decree affirmed with costs.*