THEA R. SCHLEISSNER *vs*. TOWN OF PROVINCETOWN.

No. 88-P-507.

Barnstable. April 13, 1989. — May 30, 1989.

Present: GREANEY, C.J., ARMSTRONG, & KASS, JJ.

*Practice, Civil,* Findings by judge. *Water. Drain. Real Property,* Water, Drain, Flowage of water. *Nuisance. Municipal Corporations,* Liability for nuisance. *Damages,* Nuisance, Interest, Attorney's fees. *Injunction. Eminent Domain,* Damages.

At the jury-waived trial of an action arising out of a town's maintaining a storm water disposal system which periodically flooded the plaintiff's property, the evidence warranted the judge's determination that the town had created a private nuisance. [394-395]

At a jury-waived trial in which a judge concluded that a town had created a nuisance in its storm water disposal system, which periodically flooded the plaintiff's property, there was inadequate evidence upon which to base a calculation of damages for the plaintiff's loss of potential rental income; however, in view of the plaintiff's entitlement to damages for lost rental value and of the judge's intention to award her damages, this court concluded that the plaintiff should be allowed to present further evidence and that she was entitled to prejudgment interest on those damages. [395-396]

Upon remand of a civil action for consideration of the relief to be awarded a landowner whose property was periodically flooded as a result of a continuing nuisance created by a town's storm water disposal system, the judge was to permit the town such reasonable time as might be necessary for it to decide whether to take an appropriate drainage or other easement through the exercise of its power of eminent domain and, if takings did not occur, a permanent injunction was to be entered against the town on conditions deemed appropriate by the judge. [397]

A judge properly denied a plaintiff's request for attorney's fees in an action for nuisance arising out of a town's maintaining a storm water disposal system which periodically flooded the plaintiff's property. [397]

CIVIL ACTION commenced in the Superior Court Department on January 27, 1982.

The case was heard by *Cortland A. Mathers, J.*

*J. Douglas Murphy* for the plaintiff.

*George M. Matthews* for the defendant.

GREANEY, C.J. After a trial without a jury, a judge of the Superior Court concluded that the town of Provincetown had created a nuisance in its storm water disposal system, which periodically floods the plaintiff's property. The judge awarded the plaintiff damages of $15,000, without interest, to compensate her for the loss of the use and enjoyment of her property, and gave the town the alternative of either disconnecting certain storm drains which cause the flooding or paying the plaintiff an additional $35,000. The town has appealed the finding that it has created a nuisance. Both the town and the plaintiff challenge the relief granted. We conclude that the judge's finding that a nuisance exists is correct. We vacate the portions of the judgment concerning damages and other relief and direct further proceedings on these aspects of the case.

The judge found the following facts. The plaintiff is the owner of property at 33 Court Street in Provincetown, on which is located a house with a basement. The town owns an adjacent parcel of land that it maintains as a holding pond for surface runoff — the sump. Both properties are located in a low-lying area of the Shank Painter Basin. The sump receives natural surface water runoff as well as area surface water runoff which is collected through a system of drains into two metal pipes and fed into the sump. The smaller of the two pipes, a ten-inch pipe, is connected to at least two storm drains, while the larger pipe, a twenty-four inch pipe, is connected to at least three storm drains. The drainage system was created by the town in 1965 to relieve the pooling of surface water on nearby streets.[1]

On many occasions, the plaintiff has observed the water level rise in the sump to a point where it overflows its banks and proceeds across the common property line into her backyard. On at least two specific occasions, the water level rose high enough to enter the plaintiff's basement over the rear

---

[1] If the drains did not reroute the water from the local streets, including Court Street, to the sump, the water pooling in the street in front of plaintiff's house would overflow onto her property.

windowsills, an elevation of 6.9 feet above sea level. Expert witnesses for both sides confirmed that the amount of water flowing into the sump periodically exceeds its storage capacity. They testified that this results in a surcharge of the groundwater table in the area surrounding the sump and an overflow onto the plaintiff's property. The surcharge also causes a mounding effect in the area ground water table which has diminished the volume and functioning of the plaintiff's septic system, potentially precipitating its premature failure.

The town has been on notice of the periodic flooding problem on the plaintiff's property since before March of 1981. Up to the time of trial in January, 1988, the town had done nothing to alleviate the flooding, although it did commission an engineering study, completed in 1984, to study the history of the drainage and flooding problems in the Shank Painter Basin.[2] The flooding has continued from 1979, when the plaintiff moved into the premises, until the time of trial in 1988.

1. The judge's finding that the town has created a private nuisance, when tested under the standard governing findings of fact made by a judge deciding a case without a jury, see *First Pa. Mortgage Trust* v. *Dorchester Sav. Bank*, 395 Mass. 614, 621-622, 623-624 (1985), is not clearly erroneous. The determination whether the town has created a nuisance depends on whether it is making reasonable use of its property to control the collection and disposal of surface waters. *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 862-863 (1982). Under the reasonable use standard, as applied in surface water cases, a court is not required to balance the cost to a public defendant of an injunction which eliminates the nuisance against the plaintiff's damage because the public defendant is always free to limit its costs by acquiring drainage or other easements through exercise of the power of eminent domain. *Id.* at 864.

The plaintiff's expert testified that "seventy percent or so" of the water that reaches the sump passes through the two large

---

[2] The report confirmed the drainage problem and recommended that the excess water be pumped out of the sump. The town manager testified that the cost of such pumping would be prohibitive.

drainage pipes installed by the town. He further testified that if these pipes were eliminated the surface flooding would not continue, and the surcharging effect on the water table at the sump caused by the presence of the pipes would be dissipated over a much larger area. Moreover, the town's expert admitted that the capacity of the sump is insufficient to manage the amount of water that periodically collects there and, because the water has nowhere else to go, it floods the plaintiff's property until it eventually percolates into the groundwater table. The judge was warranted in concluding, based on the view he could reasonably take of the expert testimony, that the town had caused or permitted waters from the sump to surcharge the aquifer and repeatedly to inundate the plaintiff's backyard and basement. He was also correct in deciding on the evidence that the intrusion was not de minimis and that the town's system of drains feeding into the two large pipes directly increased the flow of water to the sump.[3]

2. The judge awarded the plaintiff the sum of $15,000 without interest to compensate her for "the loss of full use and enjoyment of her property." We agree with the town that there is an insufficient basis in the evidence to warrant these damages.

As has been noted, the plaintiff's expert testified that most of the flooding to plaintiff's property would cease if the town discontinued its use of the ten-inch and twenty-four-inch drainage pipes which currently feed the sump. In ordering the town

---

[3] The town also argues that the gist of the plaintiff's cause of action concerns negligent design and construction of the water drainage system, for which the town argues it would not be liable, and that her case cannot be improved by merely labeling the claim a nuisance claim. The judge correctly rejected the town's argument that negligence was the essence of the plaintiff's complaint. The plaintiff's claim was properly considered as a claim of nuisance.

Additionally, the town contends that it is immune from liability under the Massachusetts Tort Claims Act, G. L. c. 258. See *Patrazza* v. *Commonwealth*, 398 Mass. 464 (1986). However, "historically, municipalities have not been immune from liability for creating or maintaining a private nuisance . . . [and] [n]othing in the language of the [Tort Claims] Act signals a clear intent on the part of the Legislature to include private nuisance claims against municipal entities" within its terms. *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 18 (1987).

to discontinue its use of these pipes, the judge implicitly determined that the nuisance was one which could be abated. "If the injury [caused by the nuisance] is continuous but subject to termination by the later act of the wrongdoer, the measure [of damages] is the lessened rental value while the injury continues." *Belkus* v. *Brockton*, 282 Mass. 285, 288 (1933). This rule is well-established. See *Ryder* v. *Lexington*, 303 Mass. 281, 290-291 (1939); *Chesarone* v. *Pinewood Builders, Inc.*, 345 Mass. 236, 242 (1962); *Fenton* v. *Quaboag Country Club, Inc.*, 353 Mass. 534, 539 (1968); *Lyon* v. *Bloomfield*, 355 Mass. 738, 745 (1969); *Harrison* v. *Textron, Inc.*, 367 Mass. 540, 556 (1975).

Although there was evidence at the trial about the diminution in the fair market value of the premises, there was inadequate evidence upon which to base a calculation of damages for the plaintiff's loss of potential rental income. More specifically, the plaintiff offered no evidence of the reasonable rental value of the premises without the problems attributable to the flooding. In assessing damages, the judge relied upon inadequate evidence and did not apply the correct measure of damages as set out in the decisions cited above. In view of the plaintiff's entitlement to damages for lost rental value and of the judge's intention to award her damages, we think the plaintiff should be allowed to present further evidence on the issue.[4] We agree with her that she is entitled to prejudgment interest on these damages. G. L. c. 231, § 6B. *Von Henneberg* v. *Generazio*, 403 Mass. 519, 525-526 (1988). *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 19 (1987).

---

[4] The plaintiff also presented evidence of consequential damages she suffered because of the repeated flooding. Her backyard fill, sod, and landscaping were all destroyed and she bought cinder blocks for a wall in an attempt to obstruct the flow of water onto her property.

Further, the plaintiff presented evidence that she had suffered "considerable anxiety and distress over the repeated flooding and threat of flooding." Damages for emotional distress caused by a nuisance are appropriate in view of the evidence of independent personal injury. *Harrison* v. *Textron, Inc*, 367 Mass. at 556 n.13. See, e.g., *Hakkila* v. *Old Colony Broken Stone & Concrete Co*, 264 Mass. 447 (1928); *Fenton* v. *Quaboag Country Club, Inc.*, 353 Mass. at 539.

3. The plaintiff argues that the town should have been enjoined permanently from permitting and maintaining the nuisance emanating from the sump. We agree.

When the improper diversion of surface waters by a public defendant constitutes a continuing nuisance, the nuisance ordinarily should be permanently enjoined. See *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. at 864. See also *Jacobs* v. *Pine Manor College*, 399 Mass. 411, 418 (1987); *Franchi* v. *Boulger*, 12 Mass. App. Ct. 376, 380 (1981). The public defendant's remedy in the circumstances is to take an appropriate drainage or other easement through the exercise of its power of eminent domain. Using the power of eminent domain renders the use lawful, establishes public notice in the land records of the existence of the public defendant's rights, and provides a vehicle to compensate the owner in damages for his loss. The judge should permit the town such reasonable time as may be necessary for it to decide whether it will take drainage or other easements. If takings do not occur, a permanent injunction should be entered on conditions deemed appropriate by the judge.[5]

4. The judge properly denied the plaintiff's request for attorney's fees. "With respect to . . . nuisance actions, it long has been firmly established that counsel fees incurred in an action brought to redress a plaintiff's wrong may not be recovered." *Harrison* v. *Textron, Inc.*, 367 Mass. at 555.

5. The judgment is affirmed insofar as it determines that the defendant is maintaining a continuing nuisance to the plaintiff's damage. The portion of paragraph (1) of the judgment which sets damages at "$15,000 without interest" and paragraphs (2) and (3) of the judgment are vacated. The case is remanded for further proceedings in relation to damages and injunctive relief consistent with this opinion. The plaintiff is to have the usual costs of appeal.

*So ordered.*

---

[5] As we see it, remitting the case for consideration of this relief requires that the relief which was granted (a $35,000 payment or disconnecting the large pipes) be vacated. Setting aside that relief gives the judge a free hand to fashion a new judgment which deals with the aspects of the case involved in granting a permanent injunction.