DONALD TARZIA & another[1] *vs.* TOWN OF HINGHAM.

No. 91-P-273.

Plymouth. May 7, 1992. - November 22, 1993.

Present: BROWN. DREBEN, & IRELAND, JJ

*Massachusetts Tort Claims Act. Municipal Corporations*, Liability for tort, Liability for nuisance. *Negligence*, Municipality, Duty to prevent harm. *Nuisance. Water. Real Property*, Flowage of water.

No claim for negligence could be maintained against a town for damages resulting from the overflow of a river and pond where management of the water flow, including silt and weed removal and use of control gates, involved a high degree of discretion and judgment with respect to public policy so that the town was exempt from liability under G. L. c. 258, § 10 (*b*). [508-509]

The judge in a civil action alleging a claim of nuisance against a town incorrectly concluded that the town had acted reasonably in managing a river and pond and that flooding of the plaintiffs' property did not constitute a nuisance; the matter was remanded for reconsideration under the rule of *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392 (1989). [509-513]

CIVIL ACTION commenced in the Superior Court Department on April 15, 1987.

The case was heard by *Gerald F. O'Neill, Jr.*, J.

*William F. Wallace* for the plaintiffs.

*J. Gary Bennett* for the defendant.

BROWN, J. The plaintiffs allege that as a result of the overflow of a town river and pond they sustained bodily injury and property damage. A judge of the Superior Court, sitting without a jury, found for the town on all counts of the plaintiffs' amended complaint. Of the several counts in the plaintiffs' complaint only those alleging negligence and private nuisance are being pressed on this appeal from the ensuing

[1]Dorothy Tarzia.

judgment.[2] We reach a Solomonic conclusion: the negligence claim was correctly decided by the trial judge; the nuisance claim was not.[3]

Since 1973, the plaintiffs, Donald and Dorothy Tarzia, have been resident owners of property located near the Weir River in Hingham and Foundry Pond, which is owned by the town of Hingham. On the northerly side of the pond is a dam with control gates and sluices. In 1982, the river overflowed and flooded the plaintiffs' property. The plaintiffs implored the town to take measures to prevent future flooding; however, the town took no action, although remedial action was contemplated by an agency of the town. On June 2, 1984, the river again overflowed and flooded the plaintiffs' property. On that occasion the flooding persisted for two to three days, causing severe damage to the plaintiffs' real estate and personal property.

The trial judge made the following findings. "The flooding of the plaintiffs' property was caused by: (1) a buildup of silt and vegetation in the Weir River which decreased its water-carrying capacity; (2) a buildup of silt and vegetation in Foundry Pond which diminished its capacity to retain water within its banks, and the failure to maintain any drainage structures in an operational mode." Road sand and salt contribute to the problem in the river. Prior to 1971, the municipal entity responsible for the river and the pond had drained the pond and removed silt from the river, and on several subsequent occasions it had formulated various plans to dredge the pond, install control gates to control the seasonal water flow, and implement long range maintenance programs for the river.

---

[2]The issues presented on appeal are whether the trial judge erred in finding that (a) the town's failure to take remedial action to prevent damage to the plaintiffs' property was protected by the discretionary function exception to G. L. c. 258, § 10(b), and (b) the town's conduct in maintaining its property was reasonable, thereby defeating the plaintiffs' nuisance claim.

[3]The law of nuisance is an "impenetrable jungle." Prosser & Keeton, Torts § 86 (5th ed. 1984). Moreover, we realize that "[i]t is difficult, if not impossible, to describe nuisance without reliance on concepts . . . [of] negligence." Nolan & Sartorio, Tort Law § 446, at 190 (2d ed. 1983).

After concluding that the town "was aware of the situation for many years and took no remedial action" in furtherance of any of those plans, the judge determined that the plaintiffs could not recover for negligence as the decision how best to manage the silt and weeds in the river and pond fell within the discretionary function exception to the Massachusetts Tort Claims Act.[4] He further determined that the town's conduct in maintaining the river and pond was reasonable and, therefore, did not constitute a nuisance.

In the circumstances presented here we conclude that the town's failure to remove the accumulated silt and vegetation in the pond and the river does not constitute actionable negligence. In *Whitney* v. *Worcester*, 373 Mass. 208, 218 (1977), the Supreme Judicial Court opined that, "[w]hen the particular conduct which caused the injury is one characterized by the high degree of discretion and judgment involved in weighing alternatives and making choices with respect to public policy and planning, governmental entities [making such decisions] should remain immune from liability." The court distinguished such so-called "discretionary functions" from those involved in the "carrying out of previously established policies or plans." *Ibid.*

Citing *Doherty* v. *Belmont*, 396 Mass. 271 (1985), for support, the plaintiffs argue that removing the silt and vegetation from both the river and the pond was a ministerial maintenance obligation, rather than a discretionary function.[5] More than maintenance was here involved. How to

----

[4]The discretionary function exception exempts public employers from liability under the Massachusetts Tort Claim Act for claims based on "the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a public employer or public employee, acting within the scope of his office or employment, whether or not the discretion involved is abused." G. L. c. 258, § 10(*b*), as inserted by St. 1978, c. 512, § 15.

[5]In *Doherty*, the Supreme Judicial Court held that "[a]ny negligence in performing, or failing to perform, the ministerial task of maintenance does not rise to the level of 'public policy or planning' decisions warranting protections under G. L. c. 258, § 10(*b*)." *Id.* at 276. See *Sanker* v. *Orleans*, 27 Mass. App. Ct. 410, 412-413 (1989) (day-to-day care and maintenance seem to fall outside public policy and planning category, and "municipal

deal with the accumulation of silt and vegetation in the river and the pond, including a decision whether it should be treated at all, requires, among other things, consideration of different methods of silt and vegetation removal, the effect of using the control gates presently in place or installing new ones, the impact of removal procedures on surrounding areas, the choice of the company most qualified to effectuate the removal, and the cost and financing for such an endeavor. These decisions involve the exercise of a "high degree of discretion and judgment . . . with respect to public policy" and represent planning and policy making for which there is governmental immunity. *Harry Stoller & Co.* v. *Lowell*, 412 Mass. 139, 142 (1992), quoting from *Whitney* v. *Worcester*, 373 Mass. at 218. See also *Alter* v. *Newton, ante* 142, 145-147 (1993). Accordingly, the judge was correct in holding that the town is shielded by G. L. c. 258, § 10(*b*), from the plaintiffs' claims of negligence.[6]

The second prong of the plaintiffs' argument on appeal is that the trial judge erred in finding that the town's conduct in maintaining the river and pond was reasonable and, therefore, did not create a nuisance. A private nuisance is actionable when a property owner "creates, permits, or maintains a condition . . . on [its] property that causes a substantial and

---

negligence in such a respect is not sheltered as a discretionary function"); *Tryon* v. *Lowell*, 29 Mass. App. Ct. 720, 724 (1991) (holding that, once a fence was erected by a municipality, the city had a duty to maintain it, and its failure to do so "does not entail a discretionary function").

[6]The plaintiffs, relying on *Cady* v. *Plymouth-Carver Regional Sch. Dist.*, 17 Mass. App. Ct. 211, 215 (1983), also argue that the town is not relieved of its alleged negligence by the discretionary function exception because the town's prior actions of draining the pond, removing silt from the river, maintaining drainage structures in an operational mode, and requesting bids for the installation of gates to control spring water flow established "readily ascertainable standards." Even if such standards were established, the plaintiffs' reliance is misplaced, as the Supreme Judicial Court has pointed out that "[t]he existence of fixed or readily ascertainable standards could be relevant in deciding whether a governmental actor owed a duty to another that he negligently failed to fulfil, but it tells us nothing about whether particular discretionary conduct has a policy or planning foundation." *Harry Stoller & Co.* v. *Lowell*, 412 Mass. at 144 n.2.

unreasonable interference with the use and enjoyment of the property of another." *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. 13, 17 (1987). See *Morash & Sons, Inc.* v. *Commonwealth*, 363 Mass. 612, 616 (1973). See also *Whitney* v. *Worcester*, 373 Mass. at 219 n.11. It is a common law action not included within G. L. c. 258. The discretionary function exception in the Act thus does not apply to shield a town from claims of nuisance. *Asiala* v. *Fitchburg*, 24 Mass. App. Ct. at 18 & n.4. *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. 392, 395 n.3 (1989). That a high degree of judgment is involved in any decision to abate a nuisance does not immunize the town if it fails to take reasonable steps to remedy the situation.

The plaintiffs argue that the facts of the instant case are analogous to those in *Schleissner* v. *Provincetown, supra*, and thus its reasoning should be controlling here. We agree.[7] In *Schleissner*, the court upheld the trial court's finding of nuisance against a municipality where (1) its storm water disposal system caused the flooding of the plaintiff's property; (2) the town had been aware of the periodic flooding of the plaintiff's property for years; (3) the town took no remedial action; (4) the intrusion to the plaintiff was not de minimis; and (5) an expert testified that the town could eliminate the flooding of the plaintiff's property by removing two drainage pipes installed by the town.[8]

In the present case, in concluding that the town had acted reasonably and that the plaintiffs' claim of nuisance failed, the judge applied the legal criteria that he thought applicable

---

[7]The *Schleissner* court, relying on *Triangle Center, Inc.* v. *Department of Pub. Works*, 386 Mass. 858, 862-863 (1982), stated: "The determination whether the town has created a nuisance depends on whether it is making reasonable use of its property to control the collection and disposal of surface waters." 27 Mass. App. Ct. at 394.

[8]In the instant case (1) the accumulated silt and vegetation in the river and pond caused the flooding of the plaintiffs' property; (2) the town had been aware of the flooding of the plaintiffs' property for years; (3) the town took no remedial action; (4) the intrusion was not de minimis; and (5) an expert testified that the town could eliminate or substantially reduce the flooding by clearing the pond and river of silt and debris and could also do so by using the control gates.

to natural conditions of land as opposed to artificial conditions on land.[9] That he did this is evident from his explanation:

> "There is no dispute that a natural silt and vegetation buildup caused the flooding . . . . The only similar case of the natural filling of a watercourse resulted in a finding of no nuisance. *Sawyer v. Shader*, 321 Mass. 725 (1947). The cases relied on by the plaintiffs involve some affirmative action by the defendant to create or maintain the condition complained of as a nuisance."

The traditional common law rules distinguished between the legal criteria that apply to natural conditions as compared to artificial conditions. See Restatement (Second) of Torts §§ 839, 840(1) (1977). Prosser & Keeton, Torts § 57 (5th ed. 1984). But even assuming that the common law rules are still applicable, and we do not decide that they are, "[t]he term 'natural condition' of land [is narrowly defined and] means a condition that is not in any way the result of human activity . . . . [A]n artificial structure that was harmless when created but that has become dangerous through natural decay is not a natural condition." Restatement (Second) of Torts § 840 comment a.

Here the pond whose overflow clearly contributed to the flooding of the plaintiffs' land was artificially dammed at its northerly side and had control gates and sluices.[10] The town's

---

[9]It may be that the judge also afforded the town protection because of the policy making nature of any decision to remedy the situation. The judge stated that the "issue of discretionary function appears again in a different context . . . . There were a number of considerations, financial, practical and ecological which entered into the decision process. The court is not prepared to hold as a matter of law that any decision made on the maintenance of these waterways was unreasonable."

[10]The judge, as earlier stated, found that the flooding was caused in part by a buildup of silt and vegetation in the river and the pond and also by the failure to maintain drainage structures in an operational mode. In *Sawyer v. Shader*, 321 Mass. at 726-727, "the filling up of the watercourse [was] due to natural causes and not to any acts of the defendant, and . . . no acts of the defendant . . . caused the flooding of the plaintiff's . . . land."

land was not in its natural condition. Thus, even if the rule apparently relied upon by the judge were applicable, the rationale of *Schleissner* v. *Provincetown*, 27 Mass. App. Ct. at 394-395, governs. While the buildup of silt may have been natural,[11] the cause of the flooding was an artificial condition. That the dam, the control gates, and the sluices were built prior to the town's ownership of the land does not relieve the town from liability. Restatement (Second) of Torts § 839.[12]

We thus conclude that the judge's determination that there was no nuisance was based at least in part on his misapplication of the law.[13] In view of his other findings, we consider it likely that, applying the correct rule, that of *Schleissner*, he would find that a nuisance exists. See notes 7 & 8, *supra*. In any event, the question must be decided anew. Accordingly, the judgment is reversed as to the count alleging nuisance and is otherwise affirmed. The case is remanded to

---

[11]The buildup was also partly (although not quantifiable by the judge) a result of the town's sanding and salting of the local streets.

[12]That section, entitled "Possessor Who Fails to Abate Artificial Condition," provides in relevant part:

> "A possessor of land is subject to liability for a nuisance caused while he is in possession by an abatable artificial condition on the land, if the nuisance is otherwise actionable, and
>
> . . .
>
> "(c) he had failed after a reasonable opportunity to take reasonable steps to abate the condition or to protect the affected persons against it."

[13]The plaintiffs argue that, even if this court should think that the reasoning of *Schleissner* is not controlling here, there is another line of cases that has application to the instant circumstances. See, e.g., *Kurtigian* v. *Worcester*, 348 Mass. 284, 291 (1965). Deciding as we do, we have no need to attempt to reconcile the two lines of cases that have developed with respect to nuisance law. *Sawyer* v. *Shader*, 321 Mass. 725 (1947), represents the older line of thought that affirmative action is necessary to find that a private nuisance exists in cases involving "natural" watercourses, whereas *Kurtigian* v. *Worcester* represents the more recent view that failure to act to alleviate a nuisance may itself constitute a private nuisance.

the Superior Court for such further proceedings as are consistent with this opinion.

*So ordered.*