MILWAUKEE METROPOLITAN SEWERAGE DISTRICT,
Plaintiff-Appellant,

v.

CITY OF MILWAUKEE, Defendant-Respondent.†

Court of Appeals

*No. 02–2961. Submitted on briefs August 5, 2003.—*
*Decided September 30, 2003.*

2003 WI App 209

(Also reported in 671 N.W.2d 346.)

---

† Petition to review granted 2-24-04.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Michael J. McCabe* and *James H. Petersen*, of the Milwaukee Metropolitan Sewerage District.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Grant F. Langley*, city attorney, and *Susan E. Lappen*, assistant city attorney.

Before Wedemeyer, P.J., Schudson and Curley, JJ.

¶ 1. CURLEY, J. Milwaukee Metropolitan Sewerage District appeals the grant of summary judgment to the City of Milwaukee in its suit claiming that the City engaged in negligence and created a nuisance. The District seeks to recoup $700,000, the cost of rebuilding a metropolitan interceptor sewer that it contends was destroyed when a City water main collapsed. The District argues that the trial court erred: (1) in concluding that the City was entitled to either actual or constructive notice before it could be held liable for creating a nuisance; (2) in finding that no notice was given to the City concerning the condition of its water main; (3) in finding that the City was immune from suit under Wis. Stat. § 893.80(4) (2001–02)[1]; (4) in ruling that, at trial, the District could not avail itself of the *res ipsa loquitor* doctrine; and (5) in awarding the City costs for its photocopies. Because the District's allegations form the basis for a claim of private nuisance, no notice was required, and Wis. Stat. § 893.80(4) does not shield the City from liability for nuisances. We also conclude that the trial court prematurely decided whether the evidence supported the use of the *res ipsa loquitor* doctrine at trial and mistakenly permitted photocopying costs to be charged against the City. Therefore, we reverse.

## I. Background.

¶ 2. Early in the morning of December 9, 1999, a City of Milwaukee water main, located under the roadway near the intersection of North 40th Street and West Bluemound Road, collapsed. The authorities were first alerted to the collapse when an area resident

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

noticed two to three feet of water rushing into her basement. Directly below the water main, but twenty feet deeper, was a District metropolitan interceptor sewer that ran parallel to the water main. The sewer also collapsed, but the District contends that the sewer's cave-in happened as a direct result of the water main collapse.[2] The foundation for the District's theory is the statement of a District employee who claimed to have seen the sewer functioning twelve hours after the water main broke, proof that the water main collapsed first causing the sewer to collapse later. The District sued the City to recoup its losses in rebuilding the sewer.

¶ 3. The District's complaint alleged negligence, nuisance and unjust enrichment. In its complaint, the District stated that the City was negligent because it failed "to properly maintain and operate the water main . . . in that it did not properly monitor the volume of water through the pipeline, did not properly inspect the pipeline, did not notice unusual water flows . . . and did not properly repair/replace the City's water main in the vicinity . . . ." With respect to the nuisance claim, the District alleged that the City "permitted a nuisance condition to exist, to wit: the existence of a broken water main, which nuisance caused the collapse of the District's MIS."[3]

¶ 4. The City brought a summary judgment motion. In its motion, the City reasoned that because: (1)

---

[2] There are a great many factual disputes. As we explain later, we are obligated to accept the District's version for summary judgment purposes.

[3] The claim based on negligence was abandoned by the District on appeal. The unjust enrichment claim, seeking to recoup monies spent in fixing the City's water main, was resolved and is not before us.

it had no notice of the water main break and notice was required; (2) it had immunity for both the negligence and nuisance claims pursuant to Wis. Stat. § 893.80(4); and (3) in any event, the doctrine of *res ipsa loquitor* did not apply to the facts presented here, it was entitled to summary judgment. The trial court agreed. A dispute also arose concerning the City's photocopying costs. The trial court ruled that the City's photocopying costs were properly taxed as costs to the District.

## II. ANALYSIS.

■

¶ 5. In an appeal from the entry of summary judgment, this court reviews the record *de novo,* applying the same standard and following the same methodology required of the trial court under Wis. Stat. § 802.08. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987); *Wright v. Hasley*, 86 Wis. 2d 572, 579, 273 N.W.2d 319 (1979).

¶ 6. In *Preloznik v. City of Madison*, 113 Wis. 2d 112, 116, 334 N.W.2d 580 (Ct. App. 1983), we set out the methodology to be applied in evaluating a summary judgment motion.

> Under that methodology, the court, trial or appellate, first examines the pleadings to determine whether claims have been stated and a material factual issue is presented. If the complaint . . . states a claim and the pleadings show the existence of factual issues, the court examines the moving party's affidavits for evidentiary facts admissible in evidence or other proof to determine whether that party has made a prima facie case for summary judgment. To make a prima facie case for summary judgment, a moving defendant must show a defense [that] would defeat the claim. If the moving party has made a prima facie case for summary judg-

694

ment, the court examines the affidavits submitted by the opposing party for evidentiary facts and other proof to determine whether a genuine issue exists as to any material fact, or reasonable conflicting inferences may be drawn from the undisputed facts, and therefore a trial is necessary.

Summary judgment methodology prohibits the trial court from deciding an issue of fact. The court determines only whether a factual issue exists, resolving doubts in that regard against the party moving for summary judgment.

*Id.* (citations omitted).

## A. *Notice is not a requirement for a nuisance claim of the type alleged.*

■

¶ 7. The trial court ruled that the District's nuisance claim failed because the City had neither actual nor constructive notice of the broken water main. The District submits that the trial court "improperly engrafted a notice requirement upon a claim of 'nuisance by invasion of property interests.' " We agree.

¶ 8. The brief submitted in opposition to the City's summary judgment motion included a report of an expert witness, hired by the District, who opined that the water main in question had been leaking for between .8 and 2.6 years. The District also documented that the broken water main, installed in 1926, was made of gray cast iron, a material no longer used by the City because of its tendency to break. The City conceded that the pipe also had no casing or gravel surrounding it, unlike the current standard for buried pipes. Further, this pipe had a history of breaking; it had broken twice before in the general vicinity of the

break that occurred here. In 1992–93, the City installed a larger pipe, lower in the ground, at the intersection near where the break occurred. The District theorized that this stressed the eight-inch water main and eventually caused it to break. The District also filed records that indicated that, after the 1992–93 construction, the City intended to inspect the water mains in the area, but never did so because it ceased pressure testing as a cost-cutting measure. The District noted that the City's current maintenance program only consists of fixing and replacing water mains as they break, and it does no testing of any kind to identify weakened pipes, despite the fact that many of the water mains are extremely old.

■

¶ 9. In *Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co.*, 2002 WI 80, ¶ 21, 254 Wis. 2d 77, 646 N.W.2d 777, the supreme court set forth the distinctions between a public and a private nuisance.

> In *Schiro*, this court quoted with approval the following language defining a private nuisance: "As commonly used, [nuisance] connotes a condition or activity which unduly interferes with the use of land or of a public place. Conduct which interferes solely with the use of a relatively small area of private land is tortious but not criminal and is called a private nuisance."

*Id.*, ¶ 21, n.14 (citing *Schiro v. Oriental Realty Co.*, 272 Wis. 537, 546, 76 N.W.2d 355 (1956)). "A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community." *Id.*, ¶ 21 (footnote omitted).

¶ 10. The Restatement (Second) of Torts § 821B
(1979), defines a public nuisance and lists factors to
consider:

(1) A public nuisance is an unreasonable interference
with a right common to the general public.

(2) Circumstances that may sustain a holding that an
interference with a public right is unreasonable include
the following:

(a) Whether the conduct involves a significant
interference with the public health, the public safety,
the public peace, the public comfort or the public
convenience, or

(b) whether the conduct is proscribed by a statute,
ordinance or administrative regulation, or

(c) whether the conduct is of a continuing nature or
has produced a permanent or long-lasting effect, and,
as the actor knows or has the reason to know, has a
significant effect upon the public right.

Thus, a nuisance can be either private or public. The
trial court expressed the opinion that the nuisance law
is confusing; the trial court's confusion is understand-
able. In *Physicians Plus*, the supreme court acknowl-
edged that considerable confusion exists in the law over
the meaning of a nuisance:

As this court has recognized, nuisance is a "slippery
term," and often the best way to determine whether a
nuisance exists is by determining whether or not there
is liability for the activity or condition. *Wisconsin Power
& Light Co. v. Columbia County*, 3 Wis. 2d 1, 10, 87
N.W.2d 279 (1958); *see also Schiro v. Oriental Realty
Co.*, 272 Wis. 537, 545, 76 N.W.2d 355 (1956) ("It would

697

be difficult to find a term which has been the subject of more mystifying confusion of utterance in the reports and texts.").

254 Wis. 2d 77, ¶ 20 n.13.

¶ 11. Despite its uncertainty, the trial court ruled that the holding in *Physicians Plus* required that the City have either actual or constructive notice of the nuisance before it could be sued. In doing so, the trial court failed to distinguish between a nuisance action like that in *Physicians Plus*, where the City did not create the nuisance but negligently failed to trim trees that obscured a stop sign causing an accident, from a nuisance suit like the one alleged here, where the District claims the City's actions created the nuisance when it failed to monitor an old water pipe susceptible to breakage. In the latter, no notice is required; in the former, notice is essential to find the City liable.

¶ 12. The reasoning behind this difference is simple—in a nuisance claim, like that in *Physicians Plus*, the governmental bodies that were sued did not create the nuisance, they merely failed to take action to correct it within a reasonable period of time. Thus, before the governmental bodies could be held liable for a condition not of their own making, they had to have actual or constructive notice of the condition or activity. *See Brown v. Milwaukee Terminal Railway Co.*, 199 Wis. 575, 227 N.W. 385 (1929) (the seminal case regarding this proposition). Here, however, the City is accused of actually creating the alleged nuisance—placing and then leaving unmonitored the old water pipe that eventually burst and destroyed the sewer. Regardless of the type, public or private, notice is a necessary compo-

nent of a nuisance claim only when the party being sued did not create the nuisance.

¶ 13. The supreme court in *Physicians Plus* acknowledged this importance distinction:

> *Brown* distinguishes liability for maintaining a public nuisance from liability for creating a public nuisance, by requiring actual or constructive notice in maintenance of public nuisance cases. Based on this distinction, we interpret *Brown* as essentially dividing public nuisance cases into two classes. The first class, maintenance of a public nuisance, bases liability on the defendant's failure to abate a public nuisance of which the defendant had actual or constructive notice. The defendant did not affirmatively create the nuisance, so liability is necessarily predicated on the defendant's notice of the hazardous condition. ... In contrast, the second class of cases focuses on the defendant's creation of the public nuisance and likewise does not require proof that the defendant had actual or constructive notice of the hazardous condition.

254 Wis. 2d 77, ¶ 24 n.19.

¶ 14. Here, the District's allegations track those of a private nuisance claim not requiring notice. The broken water main was a City-made condition which unduly interfered with the District's sewer.

¶ 15. Additional support for this conclusion, that no notice is required in a private nuisance suit of this species, comes from the Wisconsin Jury Instructions. Neither Wisconsin Jury Instruction dealing with private nuisances mentions a notice requirement. WIS JI—CIVIL 1920 discusses nuisances in general. WIS JI—CIVIL 1922 is specifically geared to municipal nuisances. It provides:

> You are instructed that a municipality must so conduct and operate its business so as not to create or

> maintain a nuisance. A municipality, in the conduct of its business, is held to the same duty with regard to nuisances as any owner of private property or any operator of a private business.
>
> You are further instructed that legislative authority granted to a municipality to operate a business . . . does not permit such municipality to so operate such business so as to create or maintain a nuisance.

WIS JI—CIVIL 1922.

¶ 16. The absence of any reference to a notice requirement in the instruction strongly suggests that in many instances, no notice is required. We are satisfied that no notice was required under the circumstances alleged here.

*B. The City has no immunity under* WIS. STAT. *§ 893.80(4) to create or maintain a nuisance.*

¶ 17. WISCONSIN STAT. § 893.80(4) limits suits brought against governmental bodies. It states:

> **(4)** No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi–legislative, judicial or quasi–judicial functions.

██

¶ 18. The City contends that it has immunity from the District's suit, pursuant to WIS. STAT. § 893.80(4), because its employees were engaged in quasi-judicial or quasi-legislative acts in the course of overseeing the water main. However, this argument

was soundly rejected in *Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986). In that case, this court stated:

> Neither sec. 893.80(4) nor the common law immunity that predated its enactment empowered a public body to create or maintain a nuisance. *See Winchell v. City of Waukesha*, 110 Wis. 101, 109, 85 N.W.2d 668, 670 (1901) . . . .
>
> . . . .
>
> . . . The law of governmental immunity as it relates to private nuisance suits remains unchanged since the *Winchell* decision. The creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(34).

*Id.* at 438–40.

¶ 19. In fact, this holding dates as far back as 1872, when our supreme court determined that municipalities could be sued for maintaining a nuisance:

> The general rule of law is that a municipal corporation has no more right to erect and maintain a nuisance than a private individual possesses, and an action may be maintained against such corporation for injuries occasioned by a nuisance for which it is responsible, in any case in which, under like circumstances, an action could be maintained against an individual.

*Harper v. City of Milwaukee*, 30 Wis. 365, 372 (1872).

¶ 20. The rule was recently reaffirmed in *Menick v. City of Menasha*, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1996), although there the plaintiffs did not prevail for other reasons. Menick sued the City of Menasha for damages resulting from the City's sewer flooding Menick's basement on two separate occasions. This court reasoned:

> While we conclude that the City cannot claim immunity against the assertion of a private nuisance action, we agree that § 844.01, STATS., does not confer a statutory basis for this claim. Furthermore, while there exists a cause of action in private nuisance, we conclude that Menick's failure to offer an expert's opinion as to the legal cause of the flooding defeats her claim.

*Menick*, 200 Wis. 2d at 744–45. While *Menick* dealt with city sewers, with respect to the immunity issue, we can discern no significant legal differences between a city's operation of its water works and that of its sewers.

¶ 21. The City also insists that it is immune under WIS. STAT. § 893.80(4) because the acts alleged to have occurred here, which resulted in the creation of the nuisance, were all negligence-based and the City is immunized against the negligent acts of its employees. The City is wrong.

■■■

¶ 22. As we have explained, a city has no immunity for its creation of a nuisance. Further, a nuisance may be proved by a showing of negligent conduct:

> Private nuisance is a term applied to an unreasonable interference with the interests of an individual in the use or enjoyment of land. The interference may result from negligent conduct. *Wisconsin Power & Light Co. v. Columbia County* (1958), 3 Wis. (2d) 1, 10, 87 N. W. (2d) 279; *Schiro v. Oriental Realty Co.* (1956), 272 Wis. 537, 545, 76 N. W. (2d) 355, 73 A.L.R.2d 1368. See Restatement, 4 Torts, p. 221, ch. 40, and Prosser, Law of Torts (2d ed.), pp. 389–391, sec. 70 (Hornbook, 2d ed. 1955).

*Hoene v. City of Milwaukee*, 17 Wis. 2d 209, 214, 116 N.W.2d 112 (1962). Therefore, while a cause of action

alleging negligence is immunized, a nuisance created by negligent conduct is not protected by the governmental immunity statute.

¶ 23. The City also suggests that public policy should bar the Districts nuisance suit. The law is well settled that nuisance actions can be brought against municipalities. Moreover, some jurisdictions have held cities strictly liable for damages caused by water mains. *See, e.g., Lubin v. Iowa City*, 131 N.W.2d 765 (Iowa 1964).

> It is neither just nor reasonable that the city engaged in a propriety activity can deliberately and intentionally plan to leave a watermain underground beyond inspection and maintenance until a break occurs and escape liability. A city or corporation so operating knows that eventually a break will occur, water will escape and in all probability flow onto the premises of another with resulting damage. We do not ordinarily think of watermains as being extra-hazardous but when such a practice is followed, they become "inherently dangerous and likely to damage the neighbor's property" within the meaning of *Pumphrey v. J.A. Jones Construction Co.*, [94 N.W.2d 737 (Iowa 1959)].

*Lubin*, 131 N.W.2d at 390–91.

¶ 24. While no Wisconsin case deals with an aging water main, the circumstances here are similar to those found in *Tarzia v. Town of Hingham*, 622 N.E.2d 1372, 1375–76 (Mass. App. Ct. 1993). There, the Massachusetts appellate court reversed a trial court that found a landowner, whose land was damaged by the flooding of a pond, could not recover from the municipality that controlled the dam, its control gates and sluices located on the pond. *Id.* at 1376. While affirming the trial court's determination that immunity existed for the

negligence cause of action, the appellate court ruled that the town had no immunity for a nuisance action grounded in the town's failure to monitor the dam and control the dam's gates and the sluices. *Id.* at 1374–75. The court, referencing the RESTATEMENT (SECOND) OF TORTS § 840, ruled that the town had no immunity for the nuisance action because "[a]n artificial structure that was harmless when created but that has become dangerous through natural decay is not a natural condition." *Tarzia,* 622 N.E.2d at 1375 (citation omitted).

¶ 25. For the reasons stated, the City's attempt to avoid the District's nuisance suit through immunity under WIS. STAT. § 893.80(4) fails.

*C. The trial court's ruling on the doctrine of* res ipsa loquitor *was premature.*

¶ 26. The District submits that the trial court should have waited until all the evidence was admitted at a trial before ruling on whether the jury could be instructed on the doctrine of *res ipsa loquitor.* The City urges us to affirm the trial court's decision because the City did not have exclusive control of the area surrounding its water main. We agree that the ruling was premature.

¶ 27. The doctrine of *res ipsa loquitur* is an evidentiary rule that ordinarily arises at trial when determining the instructions the trial court should give to the jury. *Res ipsa loquitur* is a rule of circumstantial evidence that permits a fact finder to infer a defendants negligence from the mere occurrence of the event. *See Lambrecht v. Estate of Kacmarczyk,* 2001 WI 25, 3, 241

Wis. 2d 804, 623 N.W.2d 751. Two conditions must be present before the doctrine of *res ipsa loquitur* is applicable. [T]he event in question must be of a kind which does not ordinarily occur in the absence of negligence and the agency of instrumentality causing the harm must have been within [the] exclusive control of the defendant. WIS JICIVIL 1145, cmt. The jury is free to accept or reject this permissible inference.

¶ 28.　The District advances that the trial court should hear all the evidence before concluding whether the doctrine is applicable. This is a reasonable request. Further, while we could find no Wisconsin case that applied the doctrine to water mains, other jurisdictions have done so. *See, e.g., Quigley v. Village of Hibbing*, 129 N.W.2d 765 (Minn. 1964) (We conclude that upon the record before us the prerequisites for the application of the doctrine of res ipsa loquitur appear as a matter of law, and that the plaintiffs were entitled to have their case submitted to the jury with appropriate instructions on this theory.). Thus, depending on the proffered evidence, at the conclusion of the case, the trial court can decide whether the jury instruction is appropriate.

*D. Photocopying expenses are not a taxable cost.*

¶ 29.　Finally, we address the District's contention that the trial court erred in awarding the City photocopying expenses. We recognize that our decision overturns the trial court's grant of summary judgment, thus rendering the earlier costs a nullity, but the issue may well occur again, so we decide it. *Hull v. State Farm Mut. Auto. Ins. Co.*, 222 Wis. 2d 627, 640 n.7, 586 N.W.2d 863 (1998) ("[T]o further judicial economy and

guide trial courts and litigants, we may consider additional issues [that] have been fully briefed and are likely to recur.").

¶ 30. After prevailing on the motion for summary judgment, the City submitted a bill of costs to the clerk of the circuit court. The District took exception to paying for a "mediation service fee," listed as a taxable cost. Ultimately, judgment was entered without the mediation fee. The City then filed an amended judgment seeking to include the "mediation service fee" and, for the first time, its photocopying costs of $1862.21. The District objected. The trial court denied the request to include the "mediation service fee," but awarded the photocopying fees. The District argues that the trial court erred for two reasons. First, the City did not follow the proper procedure, outlined in WIS. STAT. § 814.10(4), for the taxing of costs; and second, the photocopying expenses are not taxable under WIS. STAT. § 814.04, the statute listing allowable costs. We agree with the District's second argument.

¶ 31. Section 814.10(4), provides, in relevant part:

> The clerk shall note on the bill all items disallowed, and all items allowed, to which objections have been made. This action may be reviewed by the court on motion of the party aggrieved made and served within 10 days after taxation. The review shall be founded on the bill of costs and the objections and proof on file in respect to the bill of costs. *No objection shall be entertained on review which was not made before the clerk, except to prevent great hardship or manifest injustice.*

(Emphasis added.) Thus, the proper procedure, unless unusual circumstances exist, is for the trial court to refrain from entertaining a motion for costs until the

matter has been addressed by the clerk of circuit court. Here, the judgment clerk refused to assess the photocopying expenses as costs unless the trial court ordered it. Thus, the City followed the proper procedure. However, we reject the City's attempt to transmute the photocopies into certified copies by arguing that the copies were sworn public documents and, therefore, became a type of "certified copies" that are taxable costs under the statute. Affidavits filed by government workers, like those filed here, are not certified copies.

¶ 32. Moreover, in *Kleinke v. Farmers Cooperative Supply & Shipping*, 202 Wis. 2d 138, 549 N.W.2d 714 (1996), the supreme court determined that photocopy expenses are not allowable costs under the statutes.

> [T]he trial court erred as a matter of law in allowing as taxable costs the expenses incurred by the plaintiffs in photocopying medical records, appraisals, and exhibits. In *Ramsey v. Ellis* [citation omitted], the court of appeals held that photocopies could not be taxed against a party pursuant to the costs statute. It ruled that the only statutory authorization for an award of copying costs is "for certified copies of papers and records in any public office." Wis. Stat. § 814.04(2). The court of appeals' interpretation of Wis. Stat. § 814.04(2) comports with its plain meaning and is correct.

*Kleinke*, 202 Wis. 2d at 148.

¶ 33. For all the reasons stated, we reverse the trial court's grant of summary judgment and remand to the trial court.

*By the Court.*—Judgment and order reversed and cause remanded.