SHIRLEY S. ABRAHAMSON, C.J.
¶ 120. {dissenting). I conclude that the Milwaukee Metropolitan Sewerage District (the District or MMSD) is immune from suit for any monetary damages or injunctive relief in the present case. The District is immune because the *629 Deep Tunnel is being operated and maintained in the manner in which it was designed. Neither Bostco nor the majority opinion has shown otherwise.
¶ 121. Decisions regarding the design of a municipal improvement project are, according to case law, legislative, discretionary decisions, the type of core decisions for which government entities are immune from suit.[1] Government entities are immune from suit even if the planning, design, and implementation of the project are negligent and lead to a harmful result, including the maintenance of a nuisance.[2]
¶ 122. If the District were not immune, I would conclude that any monetary damages or injunctive relief in the present case is limited by the statutory cap set forth in Wis. Stat. § 893.80(3).[3] Permitting a circuit court to order ad hoc abatement of a private nuisance, at unlimited cost, circumvents the monetary damage cap and eviscerates the statutory text and legislatively enacted protection of the taxpayer and the public purse.
¶ 123. Before examining the numerous errata in the majority opinion, let me sound an A*L*A*R*M. The majority opinion drastically and fundamentally increases government liability. This case alone may result in a mandatory expenditure of over $10 million by the District.
*630 ¶ 124. As a matter of courtesy and comity to the legislative branch, the majority opinion should, in my opinion, apply its new-found law only to tortious causes of action occurring after July 15, 2015. Such a delayed effective date would give public bodies time "to enable [them] to make financial arrangements to meet the new liability implicit in this holding"[4] and would give the state legislature time to consider the enactment of a new state policy on government immunity and liability. Delaying the effective date of an opinion that substantially increases government liability is not an original thought. This is exactly what the court did in Holytz v. City of Milwaukee, 17 Wis. 2d 26, 42, 115 N.W.2d 618 (1962), the seminal Wisconsin case abrogating government immunity, at least in part.
¶ 125. I now turn to a critique of the majority opinion. The first step is to put the case in perspective.
¶ 126. Bostco asserts (and the majority opinion agrees) that the District is liable in tort for negligently maintaining a private nuisance — a sewer system called the Deep Tunnel — that has interfered with Bostco's real property, regardless of the nature of the District's action that created the nuisance.[5]
*631 ¶ 127. The District derives its power to design and construct sewer systems from the legislature. The legislature has delegated that authority to cities and their sewerage districts. Wis. Stat. § 62.18. In accordance with its legislatively delegated powers, the District designed the Deep Tunnel to be built beneath the City of Milwaukee to collect and store excess sewage and storm water to prevent basement backups and sewer overflows. Taking into account a plethora of policy, planning, regulatory, and budget considerations, the District designed Phase One of the Deep Tunnel to be built beneath downtown Milwaukee. One of the District's design decisions dictated that nearly half of the Tunnel would be lined with concrete while the other half would be porous, allowing groundwater to seep through the soil and bedrock beneath downtown Milwaukee and into the Tunnel.[6] Decisions regarding the design of a municipal improvement project are, according to case law, legislative, discretionary decisions, the type of core decisions for which government entities are immune from suit.[7]
*632 ¶ 128. Since going into service in 1993, the Tunnel, according to the record, has been operated and maintained by the District in the manner in which it was designed to function. Both Bostco and the majority opinion have failed to demonstrate any way in which the Deep Tunnel is failing to function as it was designed to function. Moreover, neither Bostco nor the majority opinion has pointed to any applicable standard, that is, to any applicable statute, guideline, or regulation, requiring the District to operate or maintain the Deep Tunnel in a manner different than the way in which it was designed to function.[8]
¶ 129. Even if the District designed the Tunnel in a poor and negligent manner and has created a nuisance and injured Bostco, the District is immune from suit for that design and for the operation and maintenance of the Tunnel in accordance with that design.[9]
¶ 130. I dissent because the majority opinion reaches the wrong result by revising history, erroneously interpreting cases and statutes, isolating and citing language from cases out of context, relying on and reinvigorating recanted cases, and silently and surreptitiously overturning precedent.
*633 ¶ 131. This criticism is, alas, easy to level and to prove (and I shall). At the same time it is important to acknowledge, and I do, that the law of government tort immunity over the last 50 years since Holytz has become encrusted with not-always-consistent case law. Indeed the law may be described as having become once again "knee-deep in legal esotérica," and replete with "highly artificial judicial distinctions."[10]
¶ 132. The concurrence bemoans the fact that courts have drifted away from the text of Wis. Stat. § 893.80, never having "fashioned a precise definition of [the] phrase" "legislative, quasi-legislative, judicial, or quasi-judicial functions." Concurrence, ¶ 1. Not completely true!
¶ 133. Case after case has explained that these terms "have been collectively interpreted to include any act that involves the exercise of discretion and judgment."[11] The concurrence might not characterize this definition as "precise," but it is just as precise (or imprecise) as the concurrence's recommended "planning-operational" distinction as a sound interpretation of the statutory words.[12]
¶ 134. Indeed, this court has explicitly "decline[d] the invitation to create a planning/operational distinction to be utilized in the analysis of state employee immunity," because the distinction is "ill-defined and *634 difficult to apply." Kimps v. Hill, 200 Wis. 2d 1, 24, 546 N.W.2d 151 (1996). The planning/operational distinction has not become better defined or easier to apply since Kimps. Cases from other jurisdictions (both before and after Kimps) demonstrate that using a "planning-operational" distinction between acts that are immune and those for which a government entity is liable provides no silver bullet piercing the difficulties associated with interpreting and applying rules of government immunity and liability.[13]
¶ 135. Government immunity and liability is a complicated area of jurisprudence with 50 years of Wisconsin case law precedent that is not always easy to explain or justify. Periodically the court has attempted to synthesize and clarify our cases. This court's decision in Milwaukee Metropolitan Sewerage District v. City of Milwaukee (City of Milwaukee), 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658, just eight years ago, went a long way to clarify the issues presented in the instant case— nuisance, negligence, liability, and immunity. And here we are moving away from that decision.[14]
¶ 136. Perhaps our whole body of case law interpreting Wis. Stat. § 893.80 needs to be carefully revisited. Indeed, ten years ago I wrote that the court has *635 struggled to define the proper scope of government immunity, that revisiting the scope and limits of government immunity has far-reaching impact, and that if this court should undertake such a task it should do so only with the benefit of full information, including briefs from tort victims, the State of Wisconsin, the League of Wisconsin Municipalities, the Wisconsin Counties Association, and the Wisconsin Insurance Alliance.[15]
¶ 137. The majority opinion does not carefully revisit the law and does not have full information. Instead, unfortunately, the majority opinion further muddies the waters.
¶ 138. I am writing this dissent to focus attention on the mistaken premises upon which the majority opinion is based. I shall proceed by listing each erratum with a brief description, followed by a more extensive discussion.[16]

ERRATUM I. (¶¶ 44-65, infra )

¶ 139. THE INITIAL BAIT-AND-SWITCH. The majority opinion rests heavily on the old bait-and-switch trick.
¶ 140. Here's the basic bait: The majority opinion (at ¶ 3) declares that it "rests on our holding in Milwaukee Metro. Sewerage District v. City of Milwau *636 kee." I joined this City of Milwaukee opinion. I agreed with it then. I agree with it now.
¶ 141. Here's the switch: The majority opinion fails to adhere to City of Milwaukee and to Physicians Plus Insurance Corp. v. Midwest Mutual Insurance Co., 2002 WI 80, 254 Wis. 2d 77, 646 N.W.2d 777, upon which City of Milwaukee relies.
¶ 142. Here's the bait again: The majority opinion (at ¶ 3) correctly states the rule of law set forth in City of Milwaukee: "Whether immunity exists for nuisance founded on negligence depends upon the character of the negligent acts."[17]
¶ 143. City of Milwaukee then declares the following rule of law regarding the character of the negligent act:
A municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature. A municipality does not enjoy immunity from suit for nuisance when the underlying tortious conduct is negligence and the negligence is comprised of acts performed pursuant to a ministerial duty.[18]
¶ 144. The City of Milwaukee court did not decide whether the City was immune from suit for failing to *637 repair a leaking main before it ruptured. The court declared that the record was not sufficiently developed to determine whether the City was under a ministerial duty (a non-legislative duty) or a discretionary duty (a legislative duty) to repair the leaking main prior to its rupture. The City of Milwaukee court directed that "the circuit court must consider this issue on remand."[19]
¶ 145. Here's the switch: The majority opinion (at ¶ 41) recasts City of Milwaukee to state: "The duty to fix the pipe, if the City knew it was leaking, was 'absolute, certain and imperative,' — in other words, ministerial — even though a particular method of repairing the leak was not 'absolute, certain and imperative.'"
¶ 146. According to the majority opinion (at ¶ 43 n.25): ”[I]t is the manner in which MMSD complies with the ministerial duty to fix the problem that is subject to discretion; no such discretion exists as to whether MMSD must fix the known problem." The majority opinion further states (at ¶ 51):
[A]lthough a municipal entity escapes liability for its legislative or quasi-legislative decision regarding whether to install a particular system or structure, once the municipal entity makes the decision to install, the *638 entity is under a subsequent ministerial duty to maintain the system or structure in a safe and working order.[20]
¶ 147. In other words, according to the majority opinion (¶¶ 51, 64), once a municipal entity installs a particular system or structure, the entity is under a subsequent ministerial duty to maintain the system or structure in a safe manner and is liable for any damages negligently caused, no matter the act that caused the nuisance or the damage.[21]
*639 ¶ 148. The majority opinion flouts the City of Milwaukee rule of law that distinguishes between operation and maintenance of the Tunnel that may in particular circumstances be legislative actions, and operation and maintenance of the Tunnel that may in other circumstances be ministerial actions. The majority opinion then imposes liability in a limited amount for damages for negligent operation and maintenance of a nuisance and unlimited injunctive relief for a nuisance, regardless of whether the negligently created nuisance is a result of discretionary action or a failure to fulfill a ministerial duty.

ERRATUM II. (¶¶ 66 to 86, infra)

¶ 149. A CONTINUED BAIT-AND-SWITCH. After promising to adhere to City of Milwaukee, the majority opinion contravenes City of Milwaukee in a second way: It repeatedly relies on cases explicitly called into doubt by City of Milwaukee[22] and asserts (sometimes in slightly different language) that "there is no discretion as to maintaining the [sewer system] so as not to cause injury."
¶ 150. Some cases upon which the majority opinion depends were decided before Holytz and the enactment of Wis. Stat. § 893.80 (Winchell).[23] Others were decided after Holytz and § 893.80 (Costas,[24] *640 Hillcrest,[25] Menick,[26] and Welch[27]). These cases have all been called into question by subsequent case law, especially by City of Milwaukee.[28] Thus once again the majority opinion has baited us with a promise to adhere to the City of Milwaukee case but has switched to repudiating City of Milwaukee.

ERRATUM III. (¶¶ 87 to 99, infra)

¶ 151. EQUITABLE CLAIM: WIS. STAT. § 893.80(3). The majority opinion bends the text of Wis. Stat. § 893.80(3) to conclude that the $50,000 statutory cap does not apply to a court order directing a municipal entity to abate a nuisance founded on tort for which it is liable.[29]
*641 ¶ 152. Espousing an ordinary and reasonable interpretation of the phrase "the amount recoverable by any person for any damages ... in any action founded on tort" in § 893.80(3), the majority opinion concludes that this phrase means only money damages awarded to the complainant. The majority opinion disregards the fact that in many instances there may be no substantial difference for both the complainant and the government entity between a monetary sum awarded to a complaining party to remedy its injury and injunctive relief directed to a government entity forcing it to remedy the complaining party's injury.[30] In either event, the complainant recovers and gets the relief sought, and the government entity must expend funds. This statutory phrase, given its ordinary and reasonable meaning, governs both monetary damages and injunctive relief in any action founded on tort.
¶ 153. The majority opinion is oblivious to the extreme irony in limiting monetary damages to $50,000 for public policy reasons while requiring government entities to pay as much as it takes to abate a nuisance.
¶ 154. The majority opinion's interpretation of Wis. Stat. § 893.80(3) is unreasonable and absurd, as it renders meaningless the $50,000 legislatively mandated limit on the amount a government entity must expend when liable for its tortious conduct.

*642
ERRATUM IV. (¶¶ 100 to 132, infra )

¶ 155. EQUITABLE CLAIM CONTINUED: WIS. STAT. § 893.80(3), (4), and (5). The majority opinion offers up a potpourri of arguments to support its thesis that Wis. Stat. § 893.80(3), (4), and (5) do not apply to injunctive relief in a tort action such as the present case. In all of its analysis, the majority opinion overlooks the plain text of Wis. Stat. § 893.80(3), (4), and (5). The texts are broadly worded, regulating "any action founded on tort," "any suit," and "all claims against a . . . governmental subdivision," and declaring that § 893.80 shall be "exclusive."
¶ 156. Clearly Bostco's request for injunctive relief in this tort action is encompassed in "any suit." It is labeled a claim and is a "claim" that fits within the statutory phrase "all claims."
¶ 157. Section 893.80 uses all-encompassing words, like"any action founded on tort," "any suit," "exclusive," and "all claims" to include injunctive and "all" types of relief for negligent tortious conduct within the confines of § 893.80.
¶ 158. The majority opinion offers no statute (or precedent) excluding injunctive relief from Wis. Stat. § 893.80 or excluding the facts of the present case from § 893.80.
¶ 159. The majority opinion enables a court to order abatement of a private nuisance at unlimited cost, thereby eviscerating the text and legislatively enacted protection of the taxpayer and the public purse.

ERRATUM V. (¶¶ 133 to 152, infra)

¶ 160. EQUITABLE CLAIM: MANY UNANSWERED QUESTIONS. The majority opinion fails to discuss injunctive relief in any meaningful manner. The *643 injunctive remedy adopted by the majority opinion leaves more questions than answers. In ordering injunctive relief, the majority opinion does not pay particular attention to the public consequences and hardships of granting injunctive relief, as required by law. It does not recognize that the legislature has declared that the statutorily allowed damages are sufficient. It does not determine whether Bostco's contributory negligence reduces the available equitable relief. It disregards the practicability of a court's framing and enforcing an injunctive order when the Deep Tunnel is a municipal structure highly regulated by state and federal laws and overseen by the Department of Natural Resources.

ERRATUM VI. (¶¶ 153 to 158)

¶ 161. UNFUNDED MANDATE: CONTRARY TO PUBLIC POLICY. The majority opinion expands government liability and increases costs for government entities and taxpayers. This results in an unfunded mandate on government entities. Increased government liability is contrary to recent legislative expressions of state policy that reduce government liability and reduce potential recovery for tort victims. The majority opinion is marching in the opposite direction from the legislature.
¶ 162. On consideration of these serious errata, I dissent.
I
¶ 163. I agree with the majority opinion that the proper negligence, nuisance, liability, and immunity analyses rest upon City of Milwaukee. Majority op., ¶ 3. *644 The decision in City of Milwaukee builds on the Physicians Plus decision and carefully analyzes half a century of precedent.[31] The rub, as I have stated, is that the majority opinion does not adhere to the City of Milwaukee decision.
¶ 164. The negligent creation and known existence of a nuisance are alone insufficient to impose liability on a municipal entity. As City of Milwaukee instructs, once a property owner proves the existence of a nuisance and notice to the entity, the owner must also prove that the underlying tortious conduct giving rise to the nuisance constitutes actionable negligence.[32]
¶ 165. Once actionable negligence is established, the next step under City of Milwaukee is to determine the nature of the municipal entity's negligent acts in order to determine whether the entity is liable or immune. As City of Milwaukee explained: "[A] municipality may be immune from nuisance suits depending on the nature of the tortious acts giving rise to the nuisance. A municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature."[33]
¶ 166. City of Milwaukee further explained that " [decisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity."[34] Thus, if the nuisance in the present case is predicated on negligent "[djecisions concerning the adoption, design and implementation of the Deep Tun *645 nel, then such actions are "discretionary, legislative decisions" for which the District enjoys immunity.[35]
¶ 167. In contrast, if the nuisance is predicated on a negligent act in performing a ministerial duty to operate or maintain the Deep Tunnel that caused the nuisance, then the District is liable.[36]
¶ 168. In City of Milwaukee, the City's water main was obviously neither designed nor constructed to leak. All agreed that the water main leaked and then ruptured, causing damage to MMSD's sewer. MMSD in that case did not allege that the City was negligent in failing to repair the main after it ruptured. MMSD alleged that the City was negligent and created a nuisance by failing to monitor and inspect the system to detect leaks, and by failing to repair the main before it ruptured. The question before the Supreme Court was whether the City had a ministerial duty to act while the water main was leaking before the main ruptured.[37]
¶ 169. At no time in City of Milwaukee did this court decide that the City had a ministerial duty to abate a nuisance merely because it had notice of the nuisance. The court decided only that the City may be *646 liable if it had sufficient notice that created an "absolute, certain, and imperative" duty to act.[38]
¶ 170. The majority opinion (at ¶¶ 41, 51) recasts City of Milwaukee to state that once the District had notice that it had negligently created a private nuisance that caused damage, it had a ministerial duty to abate the nuisance. According to the majority opinion, "[OJnce the municipal entity makes the decision to install, the entity is under a subsequent ministerial duty to maintain the system or structure in a safe and working order." Majority op., ¶ 51 (footnote omitted).
*647 ¶ 171. This recasting of City of Milwaukee contradicts precedent. Case law instructs that the court must look at the act, and not simply the result. In Allstate Insurance Co. v. Metropolitan Sewerage Commission, 80 Wis. 2d 10, 258 N.W.2d 148 (1977), the court explained that "[w]here, when and how to build sewer systems are legislative determinations imposed upon a governmental body."[39] So long as the parts of the sewer system, in that case a manhole, were placed at a location in compliance with the plans, their placement is an act in compliance with a legislative function that is subject to immunity.[40] Initial planning and implementation decisions are immune even though "the placement and subsequent use of the manhole may have created a danger."[41]
¶ 172. Allstate teaches that the District may have a ministerial duty to operate and maintain the Deep Tunnel functioning in its original, intended state. The ministerial duty to operate and maintain the Tunnel does not, however, require making improvements to the Tunnel, even if an improvement is necessary to avoid harm.[42]
¶ 173. The problem in the present case is that no one examines the District's acts. No one — not Bostco, not the witnesses, not the jury, not the circuit court, not the court of appeals, and not the majority opinion— identifies the District's allegedly negligent acts that caused the nuisance or characterizes the negligent acts *648 as either discretionary (legislative) or ministerial (non-discretionary, non-legislative).
¶ 174. Bostco's complaint broadly alleges that two District actions led to the continuing private nuisance: 1) the District's negligent design and construction of the Tunnel; and 2) the District's failure to exercise ordinary care in the inspection, repair, maintenance, and operation of the Tunnel.
¶ 175. The record does not identify any District actions that are not related to design and construction.
¶ 176. The jury in the present case was never instructed to identify which negligent conduct caused the nuisance. The jury was not asked to determine whether the negligent conduct was related to the District's design and construction of the Tunnel or to the District's maintenance and operation of the Tunnel unrelated to the design and its implementation. The jury was thus not instructed about or asked about disaggregating the District's negligent legislative acts and the harm caused thereby and the District's negligent non-legislative acts and the harm caused thereby.[43]
*649 ¶ 177. The circuit court did not differentiate between legislative and non-legislative acts in analyzing the District's conduct in operating and maintaining the Tunnel.
¶ 178. The majority opinion does not attempt to do so, although, as I have explained, this distinction is crucial under City of Milwaukee.
¶ 179. City of Milwaukee clearly instructs that "the proper inquiry is to examine the character of the underlying tortious acts,"[44] because "liability depends upon the existence of underlying tortious acts that cause the harm."[45] The Restatement (Second) of Torts illustrates this point as follows:
[F]or a nuisance to exist there must be harm to another or the invasion of an interest, but there need not be liability for it. If the conduct of the defendant is not a kind that subjects him to liability... the nuisance exists, but he is not liable for ii.[46]
¶ 180. As City of Milwaukee made clear:
[I]t is incorrect to speak of nuisance "as itself a type of liability-forming conduct. .. ,"[47]
*650 Focusing the immunity analysis on the character of the tortious acts underlying the nuisance is important for two reasons. First, ... liability for nuisance is itself dependent upon whether the underlying tortious conduct is actionable. Second, and more importantly, Wis. Stat. § 893.80(4) does not immunize municipalities for certain results; rather, immunity is provided for certain acts.[48]
¶ 181. Indeed, in contrast to its other statements, the majority opinion itself recognizes that "when a plaintiff seeks equitable or injunctive relief against a municipal entity, a court must first answer the threshold question of whether immunity applies. If a court concludes that the actions the plaintiff is seeking to stop through a suit in equity are legislative, quasi-legislative, judicial or quasi-judicial, then the suit must be dismissed because the governmental entity is protected by immunity." Majority op., ¶ 66; see also id., ¶ 64.
¶ 182. In sum, the majority opinion cannot use the District's alleged negligent design or construction of the Tunnel in determining the District's liability, because those actions would be protected by immunity. The majority has not pointed to any of the District's alleged negligent operation and maintenance of the Tunnel that is not in compliance with the manner in which the Tunnel was designed. The Tunnel is not broken; it is functioning in compliance with the "plan adopted," as it was designed to function. Therefore, to create liability, the majority opinion must assert that the District negligently maintained a private nuisance, *651 that is, that its conduct (its failing to repair the Tunnel, which was operating as designed) failed to fulfill a ministerial duty to abate.
¶ 183. The majority opinion ignores the clear directive in City of Milwaukee that "[a] municipality is immune from suit for nuisance if the nuisance is predicated on negligent acts that are discretionary in nature."[49] The majority opinion bends that clear rule to hold that the maintenance of a nuisance itself is the act which is not discretionary in nature. According to the majority opinion, no longer is the act (that creates the result) the basis for liability, but rather the result (the nuisance) creates liability no matter what act caused that result.[50]
¶ 184. To repeat, neither Bostco nor the majority opinion has alleged that the Tunnel is malfunctioning. If the Deep Tunnel is functioning as designed, in compliance with the "plan adopted" and it is not broken, then, according to City of Milwaukee and Allstate (and Welch & Anhalt), the District does not have a ministerial duty to repair it.
II
¶ 185. The second erratum is a continuation of the majority opinion's bait-and-switch approach to City of Milwaukee and precedent. After promising to adhere to City of Milwaukee, the majority opinion contravenes *652 City of Milwaukee by reviving and reinvigorating cases that City of Milwaukee significantly pulled back.
¶ 186. The majority opinion repeatedly asserts (sometimes in slightly different language) the proposition that "there is no discretion as to maintaining the [sewer system] so as not to cause injury."[51] In doing so, the majority opinion depends in large part for this refrain on cases that have been called into doubt by subsequent case law, especially City of Milwaukee. In City of Milwaukee, this court explicitly cast doubt on case law preceding Holytz and the enactment of Wis. Stat. § 893.80 (Winchell)[52] and on some post -Holytz and post-§ 893.80 cases (Costas [53] *653 Hillcrest,[54] Menick,[55] and Welch[56]). Thus once again the majority opinion has baited us with a promise to adhere to City of Milwaukee but has audaciously repudiated City of Milwaukee.
¶ 187. The majority opinion repeatedly refers to Winchell v. City of Waukesha, 110 Wis. 101, 85 N.W. 668 (1901). Majority op., ¶¶ 4 n.4, 35 n.18, 69, 95 n.38. This court decided Winchell in 1901, more than 60 years before Holytz and the enactment of Wis. Stat. § 893.80 and before the extensive subsequent case law interpreting the statute. Not surprisingly then, Winchell has *654 been called into question repeatedly since 1963 as to its persuasiveness and precedential value in a post -Holytz, post-Wis. Stat. § 893.80 world.[57]
¶ 188. Even Holytz itself called into question all of the case law that came before it and gave credence to the idea that any court decision published before June 5, 1962, relating to government immunity is suspect.[58] Holytz aimed to change the law that was in the court's view "knee-deep in legal esotérica: e.g., governmental function v. proprietary function; relationship of governor to governed," and had "resulted in some highly artificial judicial distinctions."[59]
¶ 189. Although the majority opinion relies on Winchell, it spends even more time and space on Costas v. City of Fond du Lac, 24 Wis. 2d 409, 129 N.W.2d 217 (1964). Majority op., ¶¶ 31, 33, 35,41 n.21, 64, 70. Even though Costas was decided in 1964 — post -Holytz and post-§ 893.80 — the Costas court based its holding on Winchell and did not mention either Holytz or Wis. Stat. § 893.80.[60] Indeed, Costas does not even mention the phrase or notion of government immunity.
¶ 190. Costas relied heavily on Winchell and overturned an observation made in Hasslinger v. Village of Hartland, 234 Wis. 201, 207, 290 N.W. 647 (1940), that if the sewage treatment plant was built according to *655 government specification and was operating according to specification, the plant was not a nuisance in its creation or operation.[61] The Costas court disavowed this observation.
¶ 191. With regard to Costas, City of Milwaukee noted that "the holdings in Allstate Ins. Co. v. Metropolitan Sewerage Commission, 80 Wis. 2d 10, 15, 258 N.W.2d 148 (1977), and Lange v. Town of Norway, 77 Wis. 2d 313, 318, 321, 253 N.W.2d 240 (1977), effectively overruled, sub silencio," the language in Costas that a city has no immunity for the "plan adopted" for a public works system.[62] Costas has limited shelf-life and relevancy for the present case.
¶ 192. The majority opinion then discusses Hillcrest, Menick, and Welch. These cases are not good law standing for the proposition for which the majority opinion cites them, namely that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)."[63]
¶ 193. The majority opinion cites Hillcrest, the first in the series of storm sewer decisions by the court of appeals, to support its view that municipal entities are not shielded from liability for maintaining a private nuisance. The allegation was that the system discharged water that damaged the complainant's land. Citing and quoting Winchell and Costas, the court of appeals concluded that "[t]he creation and maintenance *656 of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)."[64]
¶ 194. In another sewer case, Menick, the sewer system flooded the complainant's basement. Relying on Hillcrest, the Menick court concluded that "[t]he actions of the City in operating and maintaining the sewer system do not fall within the immunity provision of § 893.80."[65]
¶ 195. The majority opinion then cites Welch, another overflowing sewer case. The majority opinion cites Welch as supporting the following: "This duty to abate arises from the longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance." Majority op., ¶ 34. In contrast, the court of appeals stated in Welch that there was no private nuisance in that case (as the majority opinion admits in footnote 20); that the city was not liable because the evidence was that the sewer system was in working order, functioning as planned; and that the municipal government was immune for the discretionary act of poor design.[66]
¶ 196. The court of appeals further explained in Welch that the verb "maintain" means "to keep in a state of repair."[67] There, as here, "it is undisputed" that the sewer system was working as designed. Thus, according to Welch, "there was no required pipe 'maintenance.' "[68]
¶ 197. Hillcrest, Menick, and Welch comprise a set of court of appeals decisions based on Winchell, Costas, *657 and each other. The majority opinion ignores the fact that City of Milwaukee and other cases rendered these cases ineffectual.[69]
¶ 198. Although language isolated from the full opinions in Winchell, Hillcrest, Menick, and Welch can be made to support the majority opinion, these cases do not buttress the majority opinion's stance. The language and the cases are suspect.
¶ 199. In City of Milwaukee, Justice Wilcox, writing for the six-person majority, called into doubt the validity of the explanations for government immunity or liability in the majority opinion's favorite court of appeals decisions as follows:
Several court of appeals decisions .. . have applied the immunity statute to a variety of nuisance claims involving sanitary and storm sewers and have utilized conflicting rationales to reach results that are not entirely consistent. See, e.g., Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511; Anhalt v. Cities and Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422; Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1996); Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986) [hereinafter Hillcrest].
To the extent these decisions have created confusion in the area of municipal immunity for nuisances, such confusion is a result of three factors. First, some decisions have continued to rely on immunity jurisprudence that predated Holytz and § 893.80(4). See, e.g., Hillcrest, 135 Wis. 2d at 438-41, 400 N.W.2d 493. Second, some decisions employ separate analyses for negligence and nuisances grounded in negligence. See, e.g., Welch, 265 Wis. 2d 688, ¶¶ 8-13, 666 N.W.2d 511. *658 Third, some decisions fail to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty. See, e.g., Anhalt, 249 Wis. 2d 62, ¶ 26, 637 N.W.2d 422.
Focusing the immunity analysis on the character of the tortious acts underlying the nuisance is important for two reasons. First, as discussed supra, liability for nuisance is itself dependent upon whether the underlying tortious conduct is actionable. Second, and more importantly, Wis. Stat. 893.80(4) does not immunize municipalities for certain results', rather, immunity is provided for certain acts.
City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17.[70]
¶ 200. Although City of Milwaukee casts a significant shadow on these cases as "utiliz[ing] conflicting rationales to reach results that are not entirely consis *659 tent,"[71] the majority opinion reinstates, reinvigorates, and perpetuates these incompatible opinions.
¶ 201. The majority opinion points to no authority aside from the out-of-context language in this small subset of court of appeals decisions that appears to state that a municipal entity has a general ministerial duty to operate and maintain a sewer system in a safe condition for neighboring property owners.
¶ 202. Indeed, the majority opinion at ¶ 41 n.21 dismisses a more recent 2001 court of appeals storm sewer case, Anhalt v. Cities & Villages Mutual Insurance Co.,[72] that is on point here and undercuts Winchell, Costas, Hillcrest, Menick, and Welch, the cases the majority opinion highlights. In Anhalt, yet one more sewer system case, residents claimed destruction to their real property from flooding. The thrust of the residents' complaint was that the city negligently designed, planned, and implemented an inadequate sewer system that caused a private nuisance. The court of appeals reviewed Winchell, Hillcrest, and Menick, the "prominent cases that apply the law of nuisance to hold municipalities liable for damages resulting from the operation of sewage systems."[73]
¶ 203. The court of appeals declared in Anhalt that no authority exists imposing a positive duty on a municipal entity to keep its sewer system current with developing needs or to remedy an untenable situation.[74] Anhalt adheres to Allstate, and holds that "the acts of designing, planning and implementing a sewer system *660 are discretionary acts protected under Wis. Stat. § 893.80(4)."[75] The system in Anhalt was operating in the manner in which it was designed to operate. Even though 46 residential properties were substantially damaged by the City's operation and maintenance of the system according to the design it selected, the court of appeals held that the remedy for the residents "lies in their power to vote rather than in the judicial system."[76]
¶ 204. Anhalt, a 2001 court of appeals decision, was followed by Welch in 2003, and although the two cases "utilized conflicting rationales," they reached the same conclusion: A municipal entity is immune from suit for injuries arising from the design, planning, and implementation of a sewer system. The older court of appeals decisions that reached a different conclusion, Hillcrest (1986) and Menick (1996), are the basis for the majority opinion, which refuses to make the slightest admission that the most recent decisions directly contradict its holding.
¶ 205. Eight years ago in City of Milwaukee and shortly before that in Physicians Plus, this court labored to synthesize the case law on negligence, nuisance, and government immunity and liability. Today, the majority opinion ignores that guidance and reinvigorates and propels repudiated precedent to reach a result that neither Wis. Stat. § 893.80 nor our case law presently supports.
*661 III
¶ 206. I come to the third erratum — the majority opinion's interpretation of the statutory cap on damages in Wis. Stat. § 893.80(3). Even if I agreed with the majority opinion that the District is liable in tort for damages and injunctive relief for the creation and maintenance of the private nuisance in the present case, and I do not, the majority opinion errs in concluding that the statutory cap in Wis. Stat. § 893.80(3) does not limit the expenditures a government entity must make to comply with an order for injunctive relief in a tort action.
¶ 207. Wisconsin Stat. § 893.80(3) provides in relevant part:
Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any... political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000. . .. (emphasis added).
¶ 208. The majority opinion (at ¶¶ 54-58) concludes that although the statutory cap on damages, injuries, or death applies to monetary damages in a tort action, the statutory cap does not similarly extend to a court order directing a municipality to abate a nuisance founded on tort for which it is liable.
¶ 209. The majority opinion reaches its unreasonable and absurd result by not adhering to the basic rules of statutory interpretation.
¶ 210. The majority opinion's reasoning turns on the words "the amount recoverable by any person" in Wis. Stat. § 893.80(3). It claims to give the phrase an *662 ordinary and reasonable meaning. It does not. The majority opinion concludes that injunctive relief is not an "amount recoverable by any person," without examining the ordinary meaning of these words or the meaning of these words in the context of Wis. Stat. § 893.80(3) and in the context of § 893.80 as a whole.
¶ 211. The majority opinion fails to acknowledge that insofar as a complainant and a government entity are concerned, in many instances there is no substantial difference between monetary damages awarded to the complaining party so that it can remedy its injury and injunctive relief directing a government entity to remedy the complaining party's injury.[77] In either event, the complainant benefits and gets the relief it sought, and the government entity must expend funds.
¶ 212. I conclude that the phrase "the amount recoverable by any person for any damages" in its ordinary and reasonable meaning includes monetary damages and equitable, injunctive relief against a municipal entity in any action founded on tort.
¶ 213. My reading of this phrase is bolstered by the legislative policy underlying Wis. Stat. § 893.80(3), namely to limit the amount of funds expended by a government entity when liable "in any action founded on tort."
*663 ¶ 214. The justification for limitations on the amount the government expends in any action founded on tort is to protect the public purse while providing some relief for damage caused by government entities acting in a non-immune manner.[78] Wisconsin adopted the concept of government immunity in Hayes v. City of Oshkosh, 33 Wis. 314, 318 (1873), holding: "Individual hardship or loss must sometimes be endured in order that still greater hardship or loss to the public at large or the community may be averted." Although the majority opinion reaffirms the constitutionality and rational basis for such caps,[79] the majority opinion is oblivious to the extreme irony in limiting monetary damages in any action founded on tort to $50,000 for public policy reasons, while requiring government entities to pay as much as it takes to abate a nuisance.[80] The injunctive relief granted in the present case might cost the District 200 times the statutory damage cap of $50,000.
*664 ¶ 215. As this court explained in Sambs v. City of Brookfield, 97 Wis. 2d 356, 293 N.W.2d 504 (1980), "The legislature's goal after Holytz was to delineate the liability to which governmental units would be exposed as a result of Holytz, to reduce the financial strain, and to enable the governmental units to plan for the risk of such liability."[81]
¶ 216. The court of appeals got it right:
The " 'notion that [the legislature] would limit liability ... with respect to one remedy while allowing the sky to be the limit with respect to another for the same violation strains credulity'" (citation omitted).
From the standpoint of the public treasury, there is little difference in practice between a monetary damage award given to a plaintiff to remedy its harm and an injunction order requiring the defendant to abate the harm.[82]
¶ 217. We are required to read statutes so that no part is rendered meaningless or superfluous and so that the statute is not rendered unreasonable or absurd. The majority opinion renders the statutory damage cap in the statute meaningless and superfluous, unreasonable, and absurd to a significant extent by granting unlimited injunctive relief.[83]
*665 ¶ 218. For the reasons set forth, I conclude that the Wis. Stat. § 893.80(3) cap applies to injunctive relief in the present case.
IV
¶ 219. I now turn to the majority opinion's erroneous interpretation of Wis. Stat. § 893.80(3), (4), and (5). According to the majority opinion, these provisions do not apply to suits for or claims for injunctive relief in actions founded on tort. Majority op., ¶¶ 59-80. The majority opinion delivers a potpourri of arguments to support its thesis but ignores the text of Wis. Stat. § 893.80(3), which we discussed above; the texts of *666 § 893.80(4) and § 893.80(5); and case law precedent interpreting these provisions.
¶ 220. Subsection (4) is broadly worded: "[N]or may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions" (emphasis added).[84] Subsection (4) bars "any suit" against any governmental subdivision for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions. Subsection (4) applies to Bostco's lawsuit.
¶ 221. The Court explained in Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, 235 Wis. 2d 409, 611 N.W.2d 693, that the term "any suit" includes injunctive relief based on tort:
The "any suit" language contained in the immunity statute, however, does not limit suits to money damages in tort but also encompasses injunctive relief based in tort. This interpretation furthers the policy rationales underlying tort immunity that officials not be "unduly hampered or intimidated in the discharge of their functions by threat of lawsuit or personal liability."[85]
*667 ¶ 222. Permitting Bostco to get relief for a negligence claim through the back door by bringing a suit for injunctive relief for a nuisance (based on negligence) "contravenes the government immunity policy of this State set forth in Wis. Stat. § 893.80(4) and consequently would not serve the ends of justice."[86]
¶ 223. Subsection (5) is also very broadly worded: "[T]he provisions and limitations of this section [893.80] shall be exclusive and shall apply to all claims against... a governmental subdivision" (emphasis added).
¶ 224. Wisconsin Stat. § 893.80(5) reads as follows:
Except as provided in this subsection, the provisions and limitations of this section shall be exclusive and shall apply to all claims against a volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency or against any officer, official, agent or employee thereof for acts done in an official capacity or the course of his or her agency or employment. WTien rights or remedies are provided by any other statute against any political corporation, governmental subdivision or agency or any officer, official, agent or employee thereof for injury, damage or death, such statute shall apply and the limitations in sub. (3) shall be inapplicable.
¶ 225. Two sentences comprise subsection (5). I shall examine each in turn.
¶ 226. The plain language of the first sentence of Wis. Stat. § 893.80(5) includes the words "exclusive" *668 and "all claims" to explain that the provisions and limitations (including the monetary limitations in subsection (3)) are "exclusive" and apply to "all claims" brought in tort. This very broad, all-inclusive language sets the stage and tone for interpreting this subsection.
¶ 227. The majority opinion curiously skips over the word "exclusive" and the phrase "shall apply to all claims." Instead the majority opinion reasons that Wis. Stat. § 893.80(3) (indeed all of § 893.80) is silent about equitable relief and therefore, that subsections (3), (4), and (5) do not govern actions in equity founded on tort. Majority op., ¶¶ 55-59, 61.
¶ 228. Clearly a request for injunctive relief founded on tort is a claim that fits within the statutory phrase in Wis. Stat. § 893.80(5): "all claims." Indeed, Count II of Bostco's complaint is labeled "Claim" and requests equitable relief. Count II of the complaint alleges the claim of a continuing nuisance (based on negligence) and asserts that abatement by concrete lining or recharge wells is the proper relief.
¶ 229. Section 893.80 is not silent about injunctive relief in tort claims, as the majority opinion proclaims. Subsection (4) addresses "any suit" and subsection (5) addresses "all claims" against a government entity. The words "any suit," "exclusive," and "all claims" are all-encompassing. The only reasonable interpretation is that a claim for injunctive relief founded on tort is within the all-inclusive scope of the words "any suit" and "all claims" and that § 893.80 is an "exclusive" provision.
¶ 230. In pursuing its myth of silence in regard to equitable relief under Wis. Stat. § 893.80, the majority opinion (¶¶ 57-58, 63) leans on Harkness v. Palmyra-Eagle School District, 157 Wis. 2d 567, 460 N.W.2d 769 (Ct. App. 1990), to support its argument that § 893.80 *669 does not apply to equitable claims. The majority opinion sidesteps the fact, however, that the Harkness decision was clearly and emphatically overruled in DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994).
¶ 231. Harkness held that subsection (4) of § 893.80 (barring suit for legislative acts of a government entity) does not apply to equitable relief and based this conclusion on two prior cases stating that the notice of claim requirements in Wis. Stat. § 893.80(1) do not apply to equitable claims. Harkness concluded that if subsection (1) does not apply to claims for injunctive relief, then subsection (4) does not apply to injunctive relief. Accordingly, the Harkness court concluded that § 893.80(4) does not bar a teacher's equitable claim for reinstatement to her previous position.
¶ 232. Reviewing the Harkness precedent in DNR v. City of Waukesha, the Supreme Court stated, ”[W]e now hold that sec. 893.80 applies to all causes of action, not just those in tort and not just those for money damages. We therefore overrule . . . Harkness ... to the extent [it] hold[s] that sec. 893.80(1) applies only to tort claims and claims for money damages."[87]
¶ 233. Because Harkness based its interpretation of subsection (4) on case law relating to subsection (1), *670 which DNR explicitly overruled, Harkness no longer retains any precedential value regarding subsection (4).
¶ 234. Johnson v. City of Edgerton, 207 Wis. 2d 343, 558 N.W.2d 653 (Ct. App. 1996), got it right, as explained by Willow Creek. The narrow issue presented in Johnson was whether the complainants were permitted to seek injunctive relief based on their claim of negligence against the city. After reviewing the Harkness and DNR cases, the court of appeals concluded, as limited by Willow Creek, "that the official immunity provisions of § 893.80(4), Stats.,. . . are not limited to . . . money-damage actions [founded on tort], but are equally applicable to [tort] actions which . . . seek injunctive relief. . . ."[88]
¶ 235. The Harkness case has been relegated to the waste bin of history. The majority opinion's reliance on Harkness is misplaced.
¶ 236. I now turn to the second sentence of Wis. Stat. § 893.80(5). It tells us how to harmonize the "exclusive" and "all claims" language of § 893.80(5) with other statutes in which the legislature may provide rights or remedies against a government entity for damage, injury, or death. The second sentence of (5) directs that when a claim is based on another statute, the damage limitations of subsection (3) no longer apply.[89]
¶ 237. The majority opinion seems to assert that Wis. Stat. § 844.01 trumps Wis. Stat. § 893.80, making § 893.80(3) inapplicable in the present case. Majority op., ¶¶ 768-71.
*671 ¶ 238. Wisconsin Stat. § 844.01 governs a person claiming interference with property who brings an action to redress past or further injury to property. The statute reads as follows:
Any person owning or claiming an interest in real property may bring an action claiming physical injury to, or interference with, the property or the person's interest therein; the action may be to redress past injury, to restrain further injury, to abate the source of injury, or for other appropriate relief.
¶ 239. Section 844.17(1) explains that a defendant in a Wis. Stat. § 844.01 suit may be "[a]ny person whose activities have injured or will injure the plaintiffs property or interests" (emphasis added). To define the word "person," the majority opinion turns to Wis. Stat. § 990.01(26). Section 990.01 sets forth definitions of words to be used in interpreting all statutes "unless such construction would produce a result inconsistent with the manifest intent of the legislature." Section 990.01(26) defines "person." "Person includes all partnerships, associations and bodies politic or corporate" (emphasis added).
¶ 240. The majority opinion reasons as follows: Chapter 844 contemplates that a body politic, such as the District, may be a defendant in an action brought by an owner of property to redress injury caused by the District's negligent maintenance of a private nuisance and to abate the source of injury. Thus, according to the majority opinion, Wis. Stat. § 893.80 does not apply to injunctions that fall within Chapter 844.
¶ 241. This reasoning is faulty.
¶ 242. First, Chapter 844 is a remedial and procedural statute; it does not create liability. Chapter 844 *672 applies only when an owner of real estate has a cause of action under common law or otherwise. Chapter 844 is a codification of remedies involving real estate, not "the creation of new or the revision of old rights or duties" (emphasis added). Shanak v. City of Waupaca, 185 Wis. 2d 568, 597, 518 N.W.2d 310 (Ct. App. 1994). In Menick v. City of Menasha, 200 Wis. 2d 737, 746-47, 547 N.W.2d 778 (Ct. App. 1995), the court of appeals, relying on Shanak, concluded that a complainant could not base her substantive claim for private nuisance against the City of Menasha on § 844.01(1). The substantive basis of the claim must be found elsewhere, wrote the court of appeals in Menick.[90]
¶ 243. The substantive basis of Bostco's claim is not Wis. Stat. § 844.01, but common law tort and § 893.80 governing a government entity's immunity and liability for tortious conduct.
¶ 244. Second, the majority opinion is inconsistent when it applies Chapter 844 to authorize injunctive relief free of Wis. Stat. § 893.80, but does not hold that Chapter 844 authorizes monetary damages free of § 893.80.
¶ 245. Chapter 844 governs both injunctive relief and monetary damages for physical injury to or interference with real property. If the majority opinion is correct that Chapter 844 trumps the cap in Wis. Stat. § 893.80(3) (as well as subsections (4) and (5)), then the majority opinion should hold, but does not, that Chapter 844 trumps the cap on monetary damages awarded to Bostco for the past and future injury to its real property caused by the District.
*673 ¶ 246. Third, in its reliance on Chapter 844, the majority opinion pays no attention to an oft-used rule of statutory interpretation: A specific statute trumps a general statute. Sometimes it is difficult to determine which is the general statute and which is the specific statute. Not here. Chapter 844 is a remedial, procedural statute and is also a general statute governing owners of real property bringing a real property action against any person. Wisconsin Stat. § 893.80 is a specific, substantive, "exclusive" statute governing the liability and immunity of a government entity named as a defendant.
¶ 247. When the legislature wants to create a specific statute that trumps Wis. Stat. § 893.80, it knows how to do so. An example of a specific statute that creates government entity tort liability was discussed in Morris v. Juneau County, 219 Wis. 2d 543, 579 N.W.2d 690 (1998).
¶ 248. In Morris,[91] a statute, then-Wis. Stat. § 81.15 (1991-92), entitled "Damages caused by high *674 way defects; liability of town and county," was specific to highway damages and specific to the liability of the town and county. The statute created a right to recover from a government entity for want of repairs of a highway.[92] Section 81.15 explicitly imposed liability on a government entity for certain conduct and limited the amount recoverable; it explicitly applied the procedures under § 893.80.[93]
¶ 249. This court concluded that Wis. Stat. § 81.15 provided "an exception to the general grant of immunity under Wis. Stat. § 893.80(4)"[94] for legislative acts, noting "that the general immunity given counties under Wis. Stat. § 893.80(4) is not applicable when the conditions of Wis. Stat. § 81.15 are met."[95] Section 81.15, stated the Morris court, is "a specific statute tak[ing] precedence over a general statute."[96]
¶ 250. Unlike the specific statute in Morris creating government liability for particular acts, Wis. Stat. § 844.01 does not explicitly apply to government entities and does not impose liability on government entities. Chapter 844 simply does not override the substantive rules in Wis. Stat. § 893.80 as the specific provisions of § 81.15 once did.
¶ 251. In sum, Wis. Stat. § 893.80(3), (4), and (5), as applicable to actions founded on tort, govern "any suit," "all claims," and are "exclusive." The majority opinion's potpourri of arguments does not demonstrate that injunctive relief is excluded in the present case. The broadly worded texts of Wis. Stat. § 893.80(3), (4), and (5) govern a government entity's tortious acts that cause *675 harm and govern claims for injunctive relief for private nuisances founded on tort. "A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause harm."[97]
V
¶ 252. The fifth erratum relates to the majority's discussion of — or rather its failure to discuss in any meaningful way — injunctive relief. The majority opinion says that injunctive relief may be ordered in excess of the statutory caps, no dollar limits. The End! The majority opinion offers no analysis or directions to the circuit court about injunctive relief and leaves unanswered numerous questions. Let me offer several comments.
¶ 253. First: When a court exercises its discretion in granting an equitable remedy, it "should pay particular regard for the public consequences in employing the extraordinary remedy of injunction."[98] "Where an important public interest would be prejudiced, the reasons for denying the injunction may be compelling."[99] An injunction against maintaining a nuisance should not be granted where "the inconveniences and hardships caused outweigh the benefits." McKinnon v. Benedict, 38 Wis. 2d 607, 616-17, 157 N.W.2d 665 (1968) (citing Maitland v. Twin City Aviation Corp., 254 Wis. 541, 549, 37 N.W.2d 74 (1949)).[100]
*676 ¶ 254. The circuit court did not exercise its discretion in the present case by paying particular regard for the public consequences or weighing the inconveniences and hardships to the parties. Without holding a hearing, the circuit court based its ruling on injunctive relief on the grounds that the monetary damages were inadequate and that Bostco was suffering irreparable harm.[101]
¶ 255. Nor does the majority opinion pay any regard to the public consequences of injunctive relief in the present case or the weighing of hardships and inconveniences.
¶ 256. Second: Ordinarily, if injunctive relief would cause substantial harm to a defendant, the injunction should be denied when monetary damages are available to the complainant.[102] In the present case, the circuit court and the majority opinion conclude that the monetary damages available to Bostco are insuffi *677 cient in amount. But the legislature has declared that the statutorily allowed amount of damages is sufficient.
¶ 257. Both the circuit court and the majority opinion defy the legislative determination that the government has rendered itself immune from liability in excess of the statutory amount. As the court held in Sambs, "whatever the monetary limitation on recovery, the amount will seem arbitrary because it is based on imponderables, [but] the legislature, not the court, must select the figure."[103] Stanhope echoes the same point: The "monetary limitation is one which the legislature determines balancing the ideal of equal justice and need for fiscal security."[104]
¶ 258. The balancing of damages, liability, and immunity with regard to a government entity is for the legislature, not the courts. Unless a constitutional violation exists, the court should respect the. legislature's decisions about what amount constitutes adequate monetary relief against a government entity and about the important public policy of protecting the fisc.[105]
The mere fact that a judgment for damages is not as adequate relief from the point of view of the plaintiff as an injunction would be is not wholly determinative of
*678 the question as to whether an injunction will be given. A judgment for damages merely shifts to the defendant a harm equal to that which the plaintiff has suffered. This is not true in the case of the issuance of an injunction. The harm to the defendant which may follow the granting of an injunction against him may be entirely disproportionate to the benefit resulting to the plaintiff.
5 Restatement of Property § 528 cmt. f at 3188 (1944), cited in part by McKinnon v. Benedict, 38 Wis. 2d 607, 618-19, 157 N.W.2d 665 (1968).
¶ 259. Third: Although the jury verdict plays a very minor role in the present case in the appellate courts, the jury verdict is instructive on the issue of injunctive relief. In its answer to a special verdict question, the jury concluded that the nuisance could be abated by reasonable means and at a reasonable cost. The jury was not asked what the reasonable means or costs were and was not instructed on this special verdict question.[106] The majority opinion does not reveal whether this jury finding of reasonableness is binding on the circuit court in exercising its discretion in an equity matter.
¶ 260. At trial, Bostco's experts testified that abatement could be accomplished by lining the Tunnel or by installing a system of groundwater monitoring and recharge wells. Majority op., ¶ 16 n.10. The only evidence regarding the cost of abatement was a $10 million estimate proposed by one of Bostco's experts.[107] *679 In contrast, the jury found that Bostco was entitled to $3 million for past damages and $6 million for future damages. Taking into account Bostco's comparative negligence, this $9 million figure was reduced to $6.3 million; the jury found Bostco 30% liable for the damage to the Boston Store building.
¶ 261. The injunctive relief, which might cost $10 million, appears out of sync with the monetary damages.
¶ 262. Furthermore, although the majority opinion (¶ 31) adopts the concept that the law of negligence applies to the nuisance in the present case, it is silent about whether the contributory negligence the jury attributed to Bostco reduces any equitable relief founded on tort and negligence.
¶ 263. Case law instructs that all the usual rules and defenses to negligence apply to nuisance claims predicated on negligence.[108] One of those defenses is contributory negligence.[109] Does Bostco have to pay 30% of the cost of abatement?
¶ 264. Fourth: What is a reasonable sum that the District should be required to expend on abatement under these circumstances? An analysis of the injunctive relief ordered shines light once more on the glaring short-sightedness of the majority opinion. Its statutory *680 interpretation undermines the purpose of Wis. Stat. § 893.80: to "compensate victims of government tortfeasors while at the same time protecting the public treasury."[110] Interpreting Wis. Stat. § 893.80 to allow unlimited injunctive relief in the present case circumvents the monetary cap set by Wis. Stat. § 893.80(3) and nullifies the statute's purpose.[111]
¶ 265. Fifth: There is a legitimate question about whether and how the majority opinion's order that the District "abate the nuisance" is to be framed and enforced.
¶ 266. The majority opinion explains at one point that "the means whereby [a] nuisance is to be abated is left to the direction of the defendant tortfeasor." Majority op., ¶ 33. Nevertheless, the majority opinion sends the issue back to the circuit court to establish the method of abatement.
¶ 267. Courts, however, "traditionally have been reluctant to enjoin as a public nuisance activities which have been considered and specifically authorized by the government."[112] The same principle should apply to a private nuisance. Moreover, the United States Supreme Court recently commented on the relative competence of courts and agencies to solve technical problems as follows: An "expert agency is surely better equipped to do the job than individual [trial] judges issuing ad hoc, case-by-case injunctions." Am. Elec. Power Co. v. Connecticut, 131 S. Ct. 2527, 2539 (2011).[113]
*681 ¶ 268. The Deep Tunnel is a municipal improvement project that is regulated by an agency with expertise — the DNR — pursuant to state and federal law. The DNR is not a party in the present case, but the District submitted two affidavits from DNR employees to the circuit court. According to the affidavits, any changes to the Tunnel must be undertaken in compliance with DNR regulations, the Federal Clean Water Act, and other applicable law. The affidavits indicate that the DNR had no intention of approving the concrete lining that Bostco and the circuit court sought.
¶ 269. Abatement may also require a study of the environmental impact, costs, and benefits of both concrete lining and alternatives to lining, and other matters regulated by state and federal law.
¶ 270. The ultimate unanswered question is whether this court, or the circuit court, or the DNR, an independent agency that is not a party to this action, governs abatement.
¶ 271. The injunction remedy adopted by the majority opinion leaves more questions than answers. Litigation may abound.
VI
¶ 272. The final erratum: The majority opinion imposes an unfunded mandate on government entities and is contrary to legislative policy. The legitimate legislative concerns of protecting the fisc, ensuring funds are available to pay for essential services, and keeping property taxes at reasonable rates are undermined by the majority opinion.
*682 ¶ 273. By means of this majority opinion, the court imposes an unfunded mandate. Government entities will now be subject to unlimited liability in the form of injunctive relief in cases founded on tort, and may not have the concurrent ability to raise additional taxes or request additional funds from the legislature to pay for the liability the court imposes.
¶ 274. Government entities are struggling to fund essential services without overburdening the tax base. State aid to government subdivisions has been reduced. The legislature has constrained the ability of government entities to raise funds by imposing levy limits.
¶ 275. Without question, the majority opinion expands government liability and increases expenses for government entities and taxpayers. This expansion of government liability, this increase in the expenditures of government entities, and this increase in costs to taxpayers are contrary to recent legislative expressions of state policy: One, reduce government liability, and two, reduce recovery for tort victims.
¶ 276. The legislature has always been less zealous in abrogating government immunity than the courts.[114] The majority opinion repeats the oft-quoted, poorly understood line from Holytz that says "the rule is liability — the exception is immunity." Majority op., ¶ 50. The legislature never codified the mantra that "the rule is liability." The 1963 statute the legislature enacted in response to Holytz does not direct that "the rule is liability — the exception is immunity." Rather, the legislature rendered government entities immune for broadly enumerated acts. And the legislature severely *683 limited the dollar amounts for which a government entity would be liable.
¶ 277. Of late, the legislature has been decreasing and eliminating tort liability for government entities and decreasing the recovery of tort victims.[115] The majority opinion is marching in the opposite direction from the legislature.
* ‡ $
¶ 278. This court attempted to synthesize the law on negligence, nuisance, liability, and immunity in City of Milwaukee. The majority opinion retreats from City of Milwaukee and confuses the law instead of developing the law in a clear manner.
¶ 279. Because of the numerous errata in the majority opinion (many of which I do not enumerate), I dissent.
¶ 280. I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

 Milwaukee Metro. Sewerage Dist. v. City of Milwaukee (City of Milwaukee), 2005 WI 8, ¶ 9, 277 Wis. 2d 635, 691 N.W.2d 658. See also Allstate Ins. Co. v. Metro. Sewerage Comm'n, 80 Wis. 2d 10, 15-17, & n.3 (collecting cases), 258 N.W.2d 148 (1977).

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 8, 44, 50, 58, 59, 60; Allstate, 80 Wis. 2d at 16.

 I agree that Bostco forfeited its inverse condemnation claim and that Bostco substantially complied with the Notice of Claim requirements. See majority op., ¶¶ 7-8.

 In Holytz v. City of Milwaukee, 17 Wis. 2d 26, 42, 115 N.W.2d 618 (1962), the court explained:
To enable the various public bodies to make financial arrangements to meet the new liability implicit in this holding, the effective date of the abolition of the rule of governmental immunity for torts shall be July 15,1962. See sec. 66.18, Stats., regarding liability insurance for both the state and municipalities. The new rule shall not apply to torts occurring before July 15,1962. However, for the reasons set forth in the supplemental opinion in Kojis v. Doctors Hospital (1961), 12 Wis. 2d 367, 373, 374, 107 N.W.2d 131, 292, this decision shall apply to the case at bar.

 See majority op., ¶¶ 3, 4, 43, 67, 71, 72.

 Some of the other decisions the District made include: the route of the Tunnel beneath the City, the Tunnel's length (19.4 miles) and diameter (varying between 17 and 32 feet), the Tunnel's depth (300 feet below ground), and the Tunnel’s capacity (405 million gallons of water).
A stipulation during litigation between the District and the Department of Natural Resources in 1986 permitted the District to line only portions of the Tunnel. The District's current permit from the DNR requires the Tunnel to have a positive inward gradient, that is, to allow water to flow into the Tunnel in order to prevent the possible exfiltration of wastewater.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 9. See also Allstate, 80 Wis. 2d at 15-17 & n.3 (collecting cases).
In City of Milwaukee, the court referred to these types of design decisions as "legislative" functions. See City of Milwau *632 kee, 277 Wis. 2d 635, ¶¶ 9, 55, 57, 58, 60, 91. For the sake of consistency, I will refer to them as "legislative" as well.

 When the court of appeals commented on this court's City of Milwaukee decision, it explained in DeFever v. City of Waukesha that "[b]ecause MMSD could not point to laws directing the City how to inspect, monitor, and repair or replace the water main, the City's duty was discretionary rather than ministerial." DeFever v. City of Waukesha, 2007 WI App 266, ¶ 12, 306 Wis. 2d 766, 743 N.W.2d 848 (citing City of Milwaukee, 277 Wis. 2d 635, ¶¶ 56-60).

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 8, 44, 50, 58, 59, 60; Allstate, 80 Wis. 2d at 16.

 Holytz, 17 Wis. 2d at 30, 32.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 54. For similar statements, see Lodl v. Progressive N. Ins. Co., 2002 WI 71, ¶ 21, 253 Wis. 2d 323, 646 N.W.2d 314; Willow Creek Ranch, L.L.C. v. Town of Shelby, 2000 WI 56, ¶¶ 25, 27, 235 Wis. 2d 409, 611 N.W.2d 693; Lifer v. Raymond, 80 Wis. 2d 503, 509, 511-12, 259 N.W.2d 537 (1977); Lister v. Bd. of Regents, 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976).

 See concurrence, ¶¶ 1, 10-11.

 The courts have not found this distinction easy to apply and decisions have not been consistent within a state or from state to state. For a discussion of this distinction and cases, see 18 Eugene McQuillin, Municipal Corporations § 53:16 (3d ed. rev. 2013).

 When a court has "authoritatively construed a statute, well-established principles of judicial decision-making require that the chosen construction be maintained unless and until the legislature either amends or repeals the statute." Reiter v. Dyken, 95 Wis. 2d 461, 470, 290 N.W.2d 510 (1980); Zimmerman v. Wis. Elec. Power Co., 38 Wis. 2d 626, 633-34, 157 N.W.2d 648 (1968). The majority opinion does not adhere to this rule of statutory interpretation.

 Scott v. Savers Prop. & Cas. Ins. Co., 2003 WI 60, ¶¶ 58-59, 262 Wis. 2d 127, 663 N.W.2d 715 (Abrahamson, C.J., concurring).

 I have tried to point out what I view as the major errors in the majority opinion. There are others. Inconsistent statement of legal principles, inconsistent application of legal principles, and inconsistent use of language cause additional problems.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 59. See also id., ¶ 90.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 8. See also id., ¶¶ 59-60, 90-91.
See also id., ¶ 9:
Decisions concerning the adoption, design, and implementation of a public works system are discretionary, legislative decisions for which a municipality enjoys immunity. Thus, the City is immune from suit relating to its decisions regarding the adoption of a waterworks system, the selection of the specific type of pipe, the placement of the pipe in the ground, and the continued existence of such pipe.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 62:
Having reviewed the record, we determine that the facts of the present case are not sufficiently developed for us to determine whether the City was under a ministerial duty to repair the leaking main prior to its break on December 9, 1999.... [W]e cannot conclude whether [the City's] duty to repair the leaking main with reasonable care before it broke was "absolute, certain and imperative," or whether the City's decision not to repair the main before the break was discretionary. As such, we cannot determine whether the City is entitled to governmental immunity under § 893.80(4) based on the record before us (internal citations omitted).
See also id., ¶¶ 90-91.

 This sentence is an example of the majority opinion's inconsistent and confusing use of the word "maintain." "Maintain" is sometimes used to mean "to keep a structure in a state of repair." At other times, the majority opinion uses the word "maintain" to mean that a municipality "maintains a nuisance," after its actions "created" or "caused" or "resulted in" the existence of the nuisance.
Before a sewer system can be "maintained" in a proper state of repair, the system must first be "created." At times, the majority opinion alludes to the fact that the District has "created and maintained a nuisance," while at other times, the majority opinion simply concludes that the District has "maintained a nuisance." See also ¶ 77, infra.
This case is unlike Physicians Plus, where an act of nature created, caused, or resulted in a nuisance — a tree hanging over and obstructing a stop sign. In the present case, the Tunnel is a man-made object created by the District, the existence of which has resulted in a nuisance. The majority opinion repeatedly asserts that the District "maintains" the nuisance or "keeps [the Tunnel] in that state."

 According to the majority opinion, "[A] municipal entity's failure to abate a continuing nuisance caused by negligent maintenance of a system" after the entity has notice does not constitute a discretionary act. Majority op., ¶ 64.
There are, however, contradictory statements scattered in the majority opinion. See, for example, majority op., ¶ 66, requiring a court to determine first whether immunity applies to the actions that caused the nuisance the plaintiff is asking to *639 stop. If immunity applies to the actions, then no relief is available, no matter the result. This is the rule clearly laid down in City of Milwaukee.

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 55 n.14, 58 n.15, 59 n.17.

 Winchell v. City of Waukesha, 110 Wis. 101, 85 N.W. 668 (1901). See majority op., ¶¶ 4 n.4, 35 n.18, 69, 98 n.3p.

 Costas v. City of Fond du Lac, 24 Wis. 2d 409, 129 N.W.2d 217 (1964). See majority op., ¶¶ 31, 33, 35, 41 n.22, 64, 69, 70.

 Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986). See majority op., ¶¶ 4, 63, 64, 98.

 Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1995). See majority op., ¶¶ 4, 36, 37, 60, 98.

 Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511. See majority op., ¶¶ 4, 34, 37 & n.20, 98.

 Anhalt v. Cities & Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422, repeats the mantra oft repeated in the majority opinion: In a suit against a municipal entity for negligent operation and failure to maintain an adequate sewerage system, the complainant has to show only that the sewerage system failed due to negligence, rather than showing the negligence stemmed from the municipal entity's failure to perform a ministerial duty. The Anhalt holding, however, does not support this refrain. See discussion at ¶¶ 80-91, 83-85, infra.

 Wisconsin Stat. § 893.80(3) provides in relevant part as follows:
Except as provided in this subsection, the amount recoverable by any person for any damages, injuries or death in any action founded on tort against any .. . political corporation, governmental subdivision or agency thereof and against their officers, offi *641 cials, agents or employees for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $50,000....

 Bostco LLC v. Milwaukee Metro. Sewerage Dist., 2011WI App 76, ¶ 133, 334 Wis. 2d 620, 800 N.W.2d 518 ("From the standpoint of the public treasury, there is little difference in practice between a monetary damage award given to a plaintiff to remedy its harm and in injunction order requiring the defendant to abate the harm.").

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 24-49.

 Id, ¶¶ 6, 7.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 8 (emphasis added); see also id., ¶¶ 58-59, 62, 90.

 Id, ¶ 9.

 Id.

City of Milwaukee makes clear that some of these discretionary, immune decisions include "decisions regarding the adoption of a waterworks system, the selection of the specific type of pipe, the placement of the pipe in the ground, and the continued existence of such pipe." City of Milwaukee, 277 Wis. 2d 635, ¶ 9. Applying these principles to this case, some of the District's discretionary decisions, which are immune from suit, include decisions regarding the adoption of a Deep Tunnel system, the selection of the specific type of Tunnel system, the placement of the Tunnel in the ground, and the continued existence of the Tunnel.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 9.

 Id., ¶¶ 8, 9, 61.

 The majority opinion, ¶¶ 38-41, 43, recasts City of Milwaukee by zeroing in on some sentences of the opinion but not reading them in context of the entire opinion. City of Milwaukee did not create a rule whereby a government entity's notice of a nuisance automatically creates a general ministerial duty to abate the nuisance, as the majority opinion in the present case claims.
A reading of the entire opinion reveals that notice was a threshold issue but was not dispositive. City of Milwaukee clearly states that the next question to be addressed by the circuit court was whether the act was discretionary. City of Milwaukee never stated that if the city had notice, a general ministerial duty to stop the leaking would necessarily follow.
A concurring opinion by Justice Prosser in City of Milwaukee demonstrates that this court did not remand to the circuit court just for the purpose of determining whether the City was on notice that the water main was leaking. Justice Prosser stated that "this formulation [in the City of Milwaukee of discretionary and ministerial actions] is so narrow that it appears to decide the case." City of Milwaukee, 277 Wis. 2d 635, ¶ 95 (Prosser, J., concurring) (internal citations omitted).
Butler v. Advance Drainage Systems, Inc., 2005 WI App 108, ¶ 40, 282 Wis. 2d 776, 698 N.W.2d 117, quotes City of Milwaukee and states that the first step in a negligent nuisance action is to determine whether a nuisance is present; the second step is to determine the underlying tortious conduct; and the third step is to decide whether the defendant's conduct "is 'otherwise actionable under the rules governing liability for negligent conduct."

 Allstate, 80 Wis. 2d at 16.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 58 (citing Allstate, 80 Wis. 2d at 16).

 Allstate, 80 Wis. 2d at 16.

 Id. at 15-16; cf. Hocking v. City of Dodgeville, 2010 WI 59, ¶¶ 45, 48, 326 Wis. 2d 155, 785 N.W.2d 398.

 The pertinent portion of the jury instructions reads as follows:
The District is specifically required by law to project, plan, design, construct, maintain and operate the sewerage system including the collection, transmission and disposal of storm water and groundwater.
As I [the circuit court judge] told you earlier, the planning, design and construction of the tunnel are not issues in this case.
The claims in this case involve claims for negligence based on the operation, maintenance and inspection of the tunnel on or after August 7, 1992. Evidence of events prior to August 7, 1992, was admitted and may be considered by you insofar as it bears on the knowledge of the parties and actions of the parties after August 7, 1992.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 59.
An accompanying footnote at ¶ 59 n.18 in City of Milwaukee reads: "Thus, the court of appeals in the instant case misstated the law when it concluded that § 893.80(4) immunizes a municipality from a cause of action alleging negligence but not a nuisance claim that is based in negligence. Milwaukee Metro. Sewerage Dist. [v. City of Milwaukee], 2003 WI App 209, ¶ 22, 267 Wis. 2d 688, 671 N.W.2d 346."

 City of Milwaukee, 277 Wis. 2d 635, ¶ 25.

 Id. (quoting Restatement (Second) of Torts § 821A cmt. c (emphasis in City of Milwaukee)).

 City of Milwaukee, 277 Wis. 2d 635, ¶ 26 (quoting Restatement (Second) of Torts § 822 cmt. c (emphasis added)).

 City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17 (emphasis in original).

 Id., ¶ 8 (emphasis added).

 Case law and black letter law instruct that a nuisance itself is not a type of liability-forming conduct and that immunity is granted for certain acts, notwithstanding their results. City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17 ("Wis. Stat. § 893.80(4) does not immunize municipalities for certain results; rather, immunity is provided for certain acts.").

 Majority op., ¶¶ 4, 60, 95 (quotingMenick, 200 Wis. 2d at 745). See also majority op., ¶¶ 33, 43 n.25, 51.

 Winchell v. City of Waukesha, 110 Wis. 101, 85 N.W. 668 (1901), is cited by the majority opinion at ¶¶ 4 n.4, 35 n.18, 69, 95 n.38, for the proposition that the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance"; the "authority granted to municipalities ... to construct sewers, [is] subject to the general legal restrictions resting upon such corporations forbidding invasion of private rights by creation of nuisance or otherwise,"; the "legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted. If such nuisance be created, the same remedies may be invoked as if the perpetrator were an individual"; and thus, the municipal entity has an obligation to abate a private nuisance the entity caused, which may include equitable relief.

 Costas v. City of Fond du Lac, 24 Wis. 2d 409, 129 N.W.2d 217 (1964), is cited by the majority opinion at ¶¶ 31, 33, 35, 41 n.22, 64, 69, 70, for the proposition that a nuisance can exist even though a sewage plant was built and operated in compliance with state plans and regulations; a private individual can bring an action for the injunctive relief of abatement of a private nuisance against a municipal entity; the municipal *653 entity's failure to abate that nuisance caused by the negligent maintenance of the system or structure after it has notice is not a discretionary act that may be entitled to immunity; but "generally the means whereby [a] nuisance is to be abated is left to the direction of the defendant tortfeasor."

 Hillcrest Golf & Country Club v. City of Altoona, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986), is cited by the majority opinion at ¶¶ 4, 63, 64, 95, for the proposition that the "creation and maintenance of private nuisances are simply not recognized as legislative acts subject to protection under sec. 893.80(4)," and the municipal entity's failure to abate that nuisance caused by the negligent maintenance of the system or structure after it has notice is not a discretionary act that may be entitled to immunity.

 Menick v. City of Menasha, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1995), is cited by the majority opinion at ¶¶ 4, 36, 37, 60, 95, for the proposition that a municipal entity does not enjoy immunity from an action for negligent creation of a private nuisance; and "there is no discretion as to maintaining [a sewer] system so as not to cause injury to residents."

 Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, is cited by the majority opinion at ¶¶ 4, 34, 37 & n.20, 95, for the proposition that there is a longstanding rule that generally municipal entities are not shielded from liability for maintaining a private nuisance; and "no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance." Ultimately though, the court of appeals concluded that the City's maintenance of its storm sewer was not a private nuisance.

 See, e.g., City of Milwaukee, 277 Wis. 2d 635, ¶¶ 51-53 n.12, 14. The court of appeals in City of Milwaukee relied on Winchell. The supreme court then characterized Winchell as a case based on obsolete logic.

 Also see pre-Holytz cases cited in the concurrence at ¶ 16 n.11 (citing Christian v. City of New London, 234 Wis. 123, 129, 290 N.W. 621 (1940); Mitchell Realty Co. v. City of West Allis, 184 Wis. 352, 363, 199 N.W. 390 (1924)).

 Holytz, 17 Wis. 2d at 30.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 55 n.14.

 See Hillcrest, 135 Wis. 2d at 440-41 (similarly interpreting Costas).

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 55 n.14, 58 n.15.

 Majority op., ¶¶ 4, 63, 95 (quoting Hillcrest, 135 Wis. 2d at 439-40).

 Hillcrest, 135 Wis. 2d at 439-40.

 Menick, 200 Wis. 2d at 745.

 Welch, 265 Wis. 2d 688, ¶¶ 12, 13, 25-27 (citing Anhalt, 249 Wis. 2d 62, ¶ 12 (quoting Allstate, 80 Wis. 2d at 15-16)).

 This court adopted a similar definition of "maintenance" in Hocking, 326 Wis. 2d 155, ¶ 48.

 Welch, 265 Wis. 2d 688, ¶ 25.

 See, e.g., Butler, 282 Wis. 2d 776, ¶ 41.

 See also City of Milwaukee, 277 Wis. 2d 635, ¶¶ 50-62. In Butler v. Advanced Drainage Systems, Inc., 2005 WI App 108, ¶ 41, 282 Wis. 2d 776, 698 N.W.2d 117, which the majority opinion ignores, the court of appeals recognized this court's abrogation of Welch and similar cases, explaining:
Welch v. City of Appleton, 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, and Anhalt v. Cities and Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422 were among those [cases] expressly noted by the [supreme] court in Milwaukee Metro. Sewerage as applying the immunity statute (because all involved municipalities) "utilizing conflicting rationales to reach results that are not entirely consistent." 277 Wis. 2d 635, ¶ 59 n.17, 691 N.W.2d 658. Welch, the court observed, erred in employing a separate analysis for negligence and nuisances grounded in negligence, and Anhalt "fail[ed] to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty. Id. To the extent that either Welch or Anhalt support the proposition that a nuisance claim need not be grounded either in intentional conduct or in otherwise actionable negligence, they are no longer good law on that point after Milwaukee Metro. Sewerage.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17.

 Anhalt v. Cities & Vills. Mut. Ins. Co., 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422.

 Anhalt, 249 Wis. 2d 62, ¶ 18.

 Id., ¶ 16.

 Id., ¶ 12 (citing Allstate, 80 Wis. 2d at 15-16).

 Anhalt, 249 Wis. 2d 63, ¶ 16.
I agree with City of Milwaukee and Butler, which criticize Anhalt, 249 Wis. 2d 62, ¶ 26, as failing "to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty." City of Milwaukee, 277 Wis. 2d 635, ¶ 59 n.17; Butler, 282 Wis. 2d 776, ¶ 41.

 The word "damages" is used in its ordinary and reasonable meaning in Wis. Stat. § 893.80(3). In cases involving insurance policies in which the insurance company agreed to pay "all sums which the insured shall become legally obligated to pay as damages," the court has rejected an overly restrictive definition of the word "damages," as understood by a reasonable insured. The court rejected the notion that the word "damages" does not encompass the insured's costs of complying with an injunctive decree, recognizing that mandatory injunctive relief may also be compensatory in nature. See Johnson Controls, Inc. v. Employers Ins. of Wausau, 2003 WI 108, ¶¶ 31-44, 264 Wis. 2d 60, 665 N.W.2d 257.

 Willow Creek, 235 Wis. 2d 409, ¶ 33:
The concerns over the expenditure of both time and resources apply with equal force to actions seeking injunctive relief as they do to actions for money damages. We recognize, however, that the suits must be based in tort to garner the protection of immunity consistent with the statute.

 See majority op., ¶¶ 78-80, 83; Sambs v. City of Brookfield, 97 Wis. 2d 356, 377, 378, 293 N.W.2d 504 (1980); Stanhope v. Brown County, 90 Wis. 2d 823, 842, 280 N.W.2d 711 (1979).

 Other courts have recognized this extreme irony. See, e.g., Andrews v. Chevy Chase Bank, 545 F.3d 570, 575 (7th Cir. 2008) (" '[T]he notion that Congress would limit liability to $500,000 with respect to one remedy while allowing the sky to be the limit with respect to another for the same violation strains credulity.'" (quoting McKenna v. First Horizon Home Loan Corp., 475 F.3d 418, 424 (1st Cir. 2007))).

 Sambs, 97 Wis. 2d at 373. For purposes of planning and budgeting for liability and litigation, damages up to $50,000 and unlimited injunctive relief are not interchangeable. See Figgs v. City of Milwaukee, 121 Wis. 2d 44, 52, 357 N.W.2d 548 (1984).

 Bostco, 334 Wis. 2d 620, ¶¶ 131, 133 (citing Andrews v. Chevy Chase Bank, 545 F.3d 570, 575 (7th Cir. 2008)).

 The majority opinion cites to Lister v. Board of Regents of the University of Wisconsin System, 72 Wis. 2d 282, 304, 240 N.W.2d 610 (1976) and Scarpaci v. Milwaukee County., 96 Wis. 2d 663, 691, 292 N.W.2d 816 (1980), for the proposition that "the public policy considerations that have prompted courts to grant substantive immunity for monetary damages do not *665 apply with equal force to actions for declaratory or injunctive relief." Majority op., ¶ 62. These cases are not pertinent to the present case. Both Lister & Scarpaci addressed the liability of individual government officers and enjoined them from acting in the future, unlike the present case in which injunctive relief will require the District to act and to incur expenses in the future. Lister, 72 Wis. 2d at 303.
For comments indicating that provisions and limits in Wis. Stat. § 893.80 apply to injunctive relief, see Willow Creek, 235 Wis. 2d 409, ¶ 36 (government immunity provisions in Wis. Stat. § 893.80(4) govern suit founded on tort against a town for money damages and injunctive relief; "Although immunity serves as a bar to both money damages and injunctive relief based in tort, municipalities do not benefit from the shield of immunity in actions seeking declaratory relief (emphasis added)). The majority opinion (¶ 59 n.32) rewrites Willow Creek to mean that because Wis. Stat. § 893.80(3) allows a declaratory judgment action (an equitable non-monetary remedy), then injunctive relief in a tort suit (also an equitable monetary remedy) is similarly permitted. See also E-Z Roll Off, LLC v. County of Oneida, 2011 WI 71, ¶¶ 21-24, 28, 335 Wis. 2d 720, 800 N.W.2d 421 (explaining the factors to consider to determine whether certain actions are exempt from notice of claim requirements found in Wis. Stat. § 893.80; court held that a claim for violation of a state antitrust statute, ch. 133, which provides for injunctive relief, is subject to § 893.80(1)).

 Wisconsin Stat. § 893.80(4) provides as follows:
No suit may be brought against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or any agency thereof for the intentional torts of its officers, officials, agents or employees nor may any suit be brought against such corporation, subdivision or agency or volunteer fire company or against its officers, officials, agents or employees for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.

 Willow Creek, 235 Wis. 2d 409, ¶ 33 (quoting Scarpaci, 96 Wis. 2d at 682 (citing Lister, 72 Wis. 2d at 299)).

 Scott, 262 Wis. 2d 127, ¶ 4; see also id., ¶ 55 (declaring that permitting damages through the back door of a promissory estoppel claim, an equitable claim, based on the same allegations as a negligence claim contravenes Wis. Stat. § 893.80(4) and does not serve the ends of justice).

 DNR v. City of Waukesha, 184 Wis. 2d 178, 191, 515 N.W.2d 888 (1994), overruled the following language in prior cases: Kaiser v. City of Mauston, 99 Wis. 2d 345, 356, 299 N.W.2d 259 (Ct. App. 1980) ("[t]his statute applies to claims for money damages. It does not apply to a claim for equitable relief'); Harkness v. Palmyra-Eagle School Dist., 157 Wis. 2d 567, 579, 460 N.W.2d 769 (Ct. App. 1990) ("[w]e have found no authority indicating that it applies to equitable or injunctive relief'); Nicolet v. Village of Fox Point, 177 Wis. 2d 80, 86, 501 N.W.2d 842 (Ct. App. 1993) ("[t]he full legislative history clarifies that sec. 893.80 never was intended to apply to equitable actions").

 Johnson v. City of Edgerton, 207 Wis. 2d 343, 352, 558 N.W.2d 653 (Ct. App. 1996). See Willow Creek, 235 Wis. 2d 409, ¶¶ 33-34 (limiting the Johnson language to tort actions).

 DNR v. City of Waukesha, 184 Wis. 2d at 192.

 See also Schultz v. Trascher, 2002 WI App 4, ¶¶ 24-29, 249 Wis. 2d 722, 640 N.W.2d 130 (Wis. Stat. § 844.01 is a remedial and procedural statute).

 Just as the legislature knows how to create liability, it also knows how to nullify liability. The legislature has essentially nullified Morris. The statute imposing liability on government entities for highway defects discussed in Morris, then-Wis. Stat. § 81.15 (1991-92), was renumbered by 2003 Wis. Act 214, and joined with the statute relating to damages and injuries caused by snow and ice accumulation. See Comment, Wis. Stat. Ann. § 893.83 (West 2006).
In 2011, the legislature enacted 2011 Wis. Act 132, which removed language holding government entities liable for highway defects. Now Wis. Stat. § 893.83 (2011-12) addresses only an action to recover damages for injuries sustained by reason of an accumulation of snow or ice that has existed for three weeks or more upon any bridge or highway. See Jessica Vanegeren, Man suffers after odd accident; Fall River resident has little legal recourse after concrete fell from bridge and hit him, Portage Daily Register, Jan. 27, 2013, available at http://www.wiscnews.com/ news/local/article_5790dl88-690c-lle2-acl5-001a4bcf887a.html (last visited July 5, 2013).

 Morris, 219 Wis. 2d at 558.

 Id. at 551-57.

 Id. at 552.

 Id. at 546.

 Id. at 552, 557.

 City of Milwaukee, 277 Wis. 2d 635, ¶ 25.

 Weinberger v. Romero-Barcelo, 456 U.S. 305, 312 (1982) (citing Railroad Comm'n v. Pullman Co., 312 U.S. 496, 500 (1941)) (emphasis added).

 City of Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 338 (1933).

 In granting an injunction, a court considers the relative hardship likely to result to the defendant if the injunction is granted and to the plaintiff if it is denied. "The appropriateness *676 of injunction against tort finally depends upon a comparative appraisal of all of the factors in the case, balanced against each other, and considered together." 4 Restatement of Torts § 936 cmt b. at 695 (1939).

 The circuit court erred in the present case by granting injunctive relief without holding a hearing, taking evidence, or making findings about the merits of the relief proposed. See Hoffmann v. Wis. Elec. Power Co., 2003 WI 64, ¶ 27, 262 Wis. 2d 264, 664 N.W.2d 55 (An ordering of injunctive relief "must be based on the merits of the [proposed relief] with a record to support that order.").

 Harrisonville v. W.S. Dickey Clay Mfg. Co., 289 U.S. 334, 337-38 (1933); Pure Milk Prods. Co-Op v. Nat'l Farmers Org., 90 Wis. 2d 781, 800, 280 N.W.2d 691 (1979) ("To invoke the remedy of injunction the plaintiff must moreover establish that the injury is irreparable, i.e. not adequately compensable in damages."); Kohlbeck v. Reliance Const. Co., Inc., 2002 WI App 142, ¶ 13, 256 Wis. 2d 235, 647 N.W.2d 277.

 Sambs, 97 Wis. 2d at 367.

 Stanhope, 90 Wis. 2d at 843.

 Stanhope, 90 Wis. 2d at 844:
Courts are not equipped or empowered to make investigations into the financial resources of various public bodies in Wisconsin; the coverage, policy limits and cost of available liability insurance; or the number of victims of governmental tortfeasors and a profile of the losses they have suffered. Information derived from such investigation must necessarily precede any reasoned evaluation of either a limitation on recovery or a requirement of purchase of insurance.

 Majority op., ¶ 35 n.19. See jury instruction at note 44, supra.

 No estimate was offered at trial about the District's costs of installing and maintaining a system of groundwater monitoring and recharge wells to replenish groundwater siphoned into the Deep Tunnel. Majority op., ¶ 15 n.10.

 City of Milwaukee, 277 Wis. 2d 635, ¶¶ 7, 45. See also Physicians Plus Ins. Corp., 2002 WI 80, ¶¶ 25, 31, 254 Wis. 2d 77, 646 N.W.2d 777.

 Physicians Plus Ins. Corp., 254 Wis. 2d 77, ¶ 31 (citing Schiro v. Oriental Realty Co., 272 Wis. 537, 547, 76 N.W.2d 355 (1956) ("[Clontributory negligence is a defense in an action for damages occasioned by a nuisance grounded upon negligence."); McFarlane v. City of Niagara Falls, 160 N.E. 391, 392 (N.Y. 1928) (Chief Judge Cardozo writing that when negligence is the basis of the nuisance, contributory negligence principles apply)).

 See Stanhope, 90 Wis. 2d at 842.

 See Bostco, 334 Wis. 2d 620, ¶ 130.

 North Carolina ex rel. Cooper v. TVA, 615 F.3d 291, 309 (4th Cir. 2010) (citing New England Legal Found. v. Costle, 666 F.2d 30, 33 (2d Cir. 1981)).

 The United States Court of Appeals for the Seventh Circuit recently made a similar comment: "Environmental *681 problems require the balancing of many complicated interests, and agencies are better suited [than judges] to weigh competing proposals and select among solutions." Michigan v. U.S. Army Corps of Eng'rs, 667 F.3d 765, 797 (7th Cir. 2011).

 "[J]udicial abrogation of common law immunity did not bind the legislature." Sambs, 97 Wis. 2d at 372.

 See, e.g., 2011 Act 132 (removing statutory language holding government entities liable for highway defects); 2011 Act 2 {e.g., restricting recovery for products liability and placing caps on punitive damages and noneconomic health care damages).